IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIS SISWANTO, Personal Representative of the Heirs of MRS. SUSIYAH, deceased, HADI WIDJAJA, Personal Representative of the Heirs of ANDREAS WIDJAJA, deceased, HENNY SANTOSA, Personal Representative of the Heirs of DJOKO SATRYO TANOE WIDJAJA, deceased, ONG SIUE HWA, Personal Representative of the Heirs of STEPHANIE YULIANTO, deceased, TRISNOWATI HALIM, Personal Representative of the Heirs of PRAWIRA HARJA SUBAGIO, deceased, TJOKRO HERWANTO TEDDY, Personal Representative of the Heirs of DJAROT BIANTORO, deceased, MRS ERNAWATI, deceased, and KEVIN BIANTORO, deceased, and MEI-YI WEE, Personal Representative of the Heirs of CHI MAN CHOI, deceased, and ZOE MAN SUEN CHOI, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>AIRBUS, S.A.S., a corporation, AIRBUS AMERICAS, INC., a corporation, DORIC CORORATION, a corporation, HONEYWELL, INTERNATIONAL, INC., a corporation, THALES GROUP, INC., a corporation, THALES USA, INC., a corporation, GE AVIATION SYSTEMS, LLC., a limited liability corporation, MOTOROLA, INC., a corporation, HAMILTON SUNDSTRAND CORP., a corporation, GOODRICH CORP., a corporation,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) No. ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## **COMPLAINT**

Plaintiffs Aris Siswanto, Personal Representative of the heirs of Mrs. Susiyah, deceased,

Hadi Widjaja, Personal Representative of the heirs of Andreas Widjaja, deceased, Henny Santosa,

Personal Representative of the heirs of Djoko Satryo Tanoe, deceased, Ong Siue Hwa, Personal Representative of the heirs of Stephanie Yulianto, deceased, Trisnowati Halim, Personal Representative of the heirs of Prawira Harja Subiago, deceased, Tjokro Herwanto Teddy, Personal Representative of the heirs of Djarot Biantoro, deceased, Mrs. Ernawati, deceased, and Kevin Biantoro, deceased, and Mei-Yi Wee, Personal Representative of the Heirs of Chi Man Choi, deceased, and Zoe Man Suen Choi, deceased, by their attorneys, Wisner Law Firm, P.C., for their complaint against defendants Airbus, S.A.S., a corporation, Airbus Americas, Inc. a corporation, Doric Corporation, a corporation, Honeywell International, a corporation, Thales Group, a corporation, Thales USA, Inc., a corporation, GE Aviation Systems LLC, a limited liability corporation, Motorola, Inc., a corporation, Hamilton Sundstrand Corp., a corporation, and Goodrich Corp., a corporation, state as follows:

## COUNT I

1.    Plaintiffs are citizens of countries other than the United States.  Plaintiffs are the heirs, and personal representatives, of their respective decedents.  Plaintiffs' decedents were citizens of countries other than the United States.

2.    Defendants Airbus, S.A.S. and Thales Group are, upon information and belief, corporations incorporated in, and having their principal places of business in, France. All other defendants are, upon information and belief, corporations incorporated in and having their principal places of business in, the United States.  All defendants do business in Illinois sufficient to subject them to the jurisdiction of the courts of this State.

3.    This action arises from the crash of Air Asia Flight 8501 in which more than 75 persons died at the same location.  Therefore, this action is governed by the Multi-Forum Multi-Jurisdiction Act, 28 U.S.C. §1369, and this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

4.     Venue is proper in this District under 28 U.S.C. §1391 as all defendants do business in this District.

5.     On a date prior to December 28, 2014, defendants Airbus, S.A.S. and Airbus Americas, Inc. ("Airbus") designed, manufactured, assembled, and sold a certain Airbus 320-200 aircraft, Registration PX-AXC ("the accident aircraft").

6.     At the time the accident aircraft left the control of defendants Airbus, it was defectively and unreasonably dangerous in one or more of the following respects:

(a)   the accident aircraft's radar did not provide complete and accurate weather information;

(b)   the accident aircraft's pitot tubes and angle of attack sensors were subject to becoming blocked or obstructed and providing erroneous information, including information as to the accident aircraft's air speed, to the air data inertial reference units ("ADIRU") and flight control computers ("FCC");

(c)   the accident aircraft's ice detection system failed to detect and warn of accumulation of ice in certain parts of the aircraft;

(d)   the accident aircraft's rudder trim limiter was subject to failure, causing an uncommanded pitch of the accident aircraft, and one of the accident aircraft's rudder trim limiters had failed prior to the subject crash;

(e)   the accident aircraft's angle of attack sensors were subject to failure in flight and an Airworthiness Directive regarding this problem was issued by the U.S. Federal Aviation Authority (FAA) and the defendants Airbus issued a revised protocol for responding to a failure in flight of the angle of attack sensors shortly prior to the subject crash;

(f)   the accident aircraft's angle of attack sensors provided erroneous information to the ADIRU's and FCC's;

(g)   the accident aircraft's ADIRU's provided erroneous data and spurious signals, including erroneous data and spurious signals concerning the aircraft's angle of attack, to the FCC's;

(h)   the accident aircraft's ADIRU's failed to filter out erroneous data and spurious signals, including erroneous data and spurious signals concerning the accident aircraft's angle of attack;

(i)   the accident aircraft's FCC's failed to filter out erroneous data and spurious signals, including erroneous data and spurious signals concerning the accident aircraft's angle of attack;

(j)   the accident aircraft's FCC's commanded dangerous and unauthorized flight control movements;

(k)   the accident aircraft's FCC's authorized uncommanded and dangerous flight control movements;

(l)   the accident aircraft did not have adequate protection of its ADIRUs, FCC's and other components from electromagnetic interference;

(m)   the accident aircraft's side stick controls provided erroneous information to the FCC's;

(n)   it was difficult to recover the accident aircraft from an unusual flight attitude; and

(o)   the accident aircraft's Flight Augmentation Computers (FAC's) were subject to failure, and one of the accident aircraft's FAC's had failed and been replaced prior to the subject crash; when the FAC's failed, the autopilot would become inoperative and the rudder limiter system, including the rudder and yaw damper, would fail, resulting in a loss of control.

7.     On December 28, 2014, the accident aircraft was being operated by Air Asia as Flight No. 8501 from Surabaya, Indonesia to Singapore.

8.     On said date, plaintiffs' decedents were fare paying passengers onboard the accident aircraft on the subject flight.

9.     As the direct and proximate result of one or more of the above-described defects in the accident aircraft, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

10.   Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

11.   Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care,

comfort, companionship, guidance, and society, and mental anguish, sorrow, and grief as a result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs pray for the entry a judgment in their favor against defendants Airbus, S.A.S. and Airbus Americas, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other amounts as may be allowed by law.

## COUNT II

1-9.  As paragraphs 1 through 9 of Count II, plaintiffs reallege paragraphs 1 through 9 of Count I.

10.  As a further direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the accident aircraft which resulted in the crash of the accident aircraft, plaintiffs' decedents, and each of them, were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

11.  Had plaintiffs' decedents survived, each of them would have been entitled to bring an action for damages and such actions have survived them.

WHEREFORE, plaintiffs pray for the entry a judgment in their favor against defendants Airbus, S.A.S. and Airbus Americas, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other amounts as may be allowed by law.

## COUNT III

1-4.  As paragraphs 1 through 4 of Count III, plaintiffs reallege 1 through 4 of Count I.

5.  On a date prior to December 28, 2014, defendants Airbus designed, manufactured, assembled, and sold a certain Airbus 320-200 aircraft, Registration No. PX-AXC ("the accident aircraft") and defendants Airbus further provided the operator of the accident aircraft, Air Asia, with after-sale warnings, instructions, and advice as to the maintenance, repair, and operation of

the accident aircraft and further provided training to flight crews of Air Asia as to the proper and safe operation of the accident aircraft.

6.  On said date and at all times relevant hereto, defendants Airbus owed a duty to plaintiffs and plaintiffs' decedents to exercise reasonable care in the design, manufacture, assembly, and sale and the providing of after-sale warnings, instructions, advice, and training to the operator of the accident aircraft so as not to cause injury to, or the deaths of, plaintiffs' decedents.

7.  Defendants Airbus negligently breached their duty of care owed to plaintiffs and plaintiffs' decedents through one or more of the following negligent acts or omissions:

(a)  negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's radar did not provide complete and accurate weather information;

(b)  negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's pitot tubes and angle of attack sensors were subject to becoming blocked or obstructed and providing erroneous information, including information as to the accident aircraft's air speed, to the air data inertial reference units ("ADIRU") and flight control computers ("FCC");

(c)  negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's ice detection system failed to detect and warn of accumulation of ice in certain parts of the aircraft;

(d)  negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's rudder trim limiter was subject to failure, causing an uncommanded pitch of the accident aircraft, and one of the accident aircraft's rudder trim limiter had failed prior to the subject crash;

(e)  negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's angle of attack sensors were subject to failure in flight and an Airworthiness Directive regarding this problem was issued by the U.S. Federal Aviation Authority (FAA) and the defendants Airbus issued a revised protocol for responding to a failure in flight of the angle of attack sensors shortly prior to the subject crash;

(f)  negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's angle of attack sensors provided erroneous information to the ADIRU's;

(g)  negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's ADIRU's provided erroneous data and spurious signals, including erroneous data and spurious signals concerning the aircraft's angle of attack, to the FCCs;

(h)   negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's ADIRU's failed to filter out erroneous data and spurious signals, including erroneous data and spurious signals concerning the accident aircraft's angle of attack;

(i)   negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's FCC's failed to filter out erroneous data and  spurious signals, including erroneous data and spurious signals concerning the accident aircraft's angle of attack;

(j)   negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's FCC's commanded dangerous and unauthorized flight control movements;

(k)   negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's FCC's authorized uncommanded and dangerous flight control movements;

(l)   negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft did not have adequate protection of its ADIRU's, FCC's and other components from electromagnetic interference;

(m)   negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's side stick controls provided erroneous information to the FCC's;

(n)   negligently designed, manufactured, assembled and sold the accident aircraft such that it was difficult to recover the accident aircraft from an unusual flight attitude;

(o)   negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's Flight Augmentation Computers (FAC's) were subject to failure and one of the accident aircraft's FAC's had failed and been replaced prior to the subject crash; when the FAC's failed, the autopilot would become inoperative and the rudder limiter system, including the rudder and yaw damper, would fail, resulting in a loss of control;

(p)   negligently failed to warn of the above-described defects in the accident aircraft;

(q)   negligently provided or failed to provide proper and adequate after-sale warnings, instructions, and advice as to the maintenance, repair, and operation of the accident aircraft; and

(r)   negligently provided or failed to provide proper and adequate training to flight crews of Air Asia as to the proper and safe operation of the accident aircraft and, specifically, negligently failed to train such flight crews in recovery from high altitude stalls and in the proper procedures to be followed in the event of a failure of the FAC's and/or the rudder limiter.

8.     On December 28, 2014, the accident aircraft was being operated by Air Asia as Flight No. 8501 from Surabaya, Indonesia to Singapore.

9.     On said date, plaintiffs' decedents were fare paying passengers onboard the accident aircraft on the subject flight.

10.   As the direct and proximate result of one or more of the aforesaid negligent acts or omissions of these defendants, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

11.   Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

12.   Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance, and society, and mental anguish, sorrow, and grief as a result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs pray for the entry a judgment in their favor against defendants Airbus, S.A.S. and Airbus Americas, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other amounts as may be allowed by law.

**COUNT IV**

1-4.   As paragraphs 1 through 4 of Count IV, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-10.   As paragraphs 5-10 of Count IV, plaintiffs reallege paragraphs 5-10 of Count III.

11. As a further direct and proximate result of one or more of the aforesaid negligent acts and omissions of the defendants Airbus which resulted in the crash of the accident aircraft, plaintiffs' decedents, and each of them, were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

12. Had plaintiffs' decedents survived, each of them would have been entitled to bring an action for damages and such actions have survived them.

WHEREFORE, plaintiffs pray for the entry a judgment in their favor against defendants Airbus, S.A.S. and Airbus Americas, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other amounts as may be allowed by law.

## COUNT V

1-4. As paragraphs 1 through 4 of Count V, plaintiffs reallege paragraphs 1 through 4 of Count I.

5. On a date prior to December 28, 2014, defendant Doric Corporation ("Doric") leased the accident aircraft to Air Asia with the knowledge that Air Asia would use the accident aircraft to transport passengers for hire.

6. At the time of its lease of the accident aircraft to Air Asia, defendant Doric knew, or in the exercise of reasonable diligence, should have known that the accident aircraft was defective in one or more of the following respects set forth in Count I, paragraph 6(a) through (o).

7. At the time of its lease of the accident aircraft to Air Asia, defendant Doric knew, or in the exercise of reasonable diligence, should have known that Air Asia Indonesia had been placed on the European Union's "blacklist" and prohibited from entering the airspace of a member State of the EU because of its failure to meet EU regulatory standards.

8.    On December 28, 2014 and at all times relevant hereto, defendant Doric owed plaintiffs and plaintiffs' decedents a duty to exercise reasonable care in the lease of the accident aircraft to Air Asia so as not to cause injury to, or the deaths of, plaintiffs' decedents.

9.    Defendant Doric negligently breached its duty owed to plaintiffs and plaintiffs' decedents in one or more of the following respects:

    (a)    negligently leased the accident aircraft to Air Asia when defendant knew or reasonably should have known that the accident aircraft was defective in one or more of the respects set forth in Count I, paragraph 6(a) through (o);

    (b)    negligently failed to warn Air Asia and its flight crews of those defects in the accident aircraft set forth above;

    (c)    negligently failed to provide post-lease warnings, instructions, advice, and training to the flight crews of Air Asia, specifically including training in recovery from high altitude stalls and in the proper procedures to be followed in the event of a failure of the FAC's and/or the rudder limiter; and

    (d)    negligently leased the accident aircraft to Air Asia Indonesia when defendant knew or reasonably should have known that Air Asia Indonesia had been placed on the European Union's "blacklist" and prohibited from entering the airspace of a member State because of its failure to meet EU regulatory standards.

10.    As the direct and proximate result of one or more of the above-stated negligent acts or omissions of defendant Doric, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

11.    Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

11.    These plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of

care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs pray for the entry a judgment in their favor against defendant Doric Corporation for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other amounts as may be allowed by law.

## COUNT VI

1-4.  As paragraphs 1 through 4 of Count VI, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-9.  As paragraphs 5 through 9 of Count VI, plaintiffs reallege paragraphs 5 through 9 of Count V.

10.  As the direct and proximate result of one or more of the above-stated negligent acts or omissions of defendant Doric which resulted in the crash of the accident aircraft as stated above, plaintiffs' decedents, and each of them, were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

11.  Had plaintiffs' decedents survived, they each would have been entitled to bring an action for damages and such actions have survived them.

WHEREFORE, plaintiffs pray for the entry a judgment in their favor against defendant Doric Corporation for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other amounts as may be allowed by law.

## COUNT VII

1-4.  As paragraphs 1 through 4 of Count VII, plaintiffs reallege paragraphs 1 through 4 of Count I.

5. On a date prior to December 28, 2014, defendant Honeywell International ("Honeywell") designed, manufactured, assembled and sold the ADIRU's in the accident aircraft.

6. At the time the ADIRU's in the accident aircraft left the custody and control of defendant Honeywell, they were defective and unreasonably dangerous in one or more of the following respects, among other defects:

(a) the ADIRU's provided erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's air speed and angle of attack, to the accident aircraft's flight control computers;

(b) the ADIRU's failed to filter out erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's air speed and angle of attack;

(c) the ADIRU's in the accident aircraft did not have adequate protection against electromagnetic interference; and

(d) the ADIRU's in the accident aircraft failed to contain any warnings of the above described defects.

7. As the direct and proximate result of one or more of the above-described defects in the ADIRU's in the accident aircraft, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

8. Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

9. Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Honeywell International for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT VIII

1-4.  As paragraphs 1 through 4 of Count VIII, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-6.  As paragraphs  5 and 6 of Count VIII, plaintiffs reallege paragraphs 5 and 6 of Count VII.

7.    As a further direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the ADIRU's on the accident aircraft which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

8.    Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Honeywell International for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT IX

1-4.    As paragraphs 1 through 4 of Count IX, plaintiffs reallege paragraphs 1 through 4 of Count I.

5.   On a date prior to December 28, 2014, defendant Honeywell designed, manufactured, assembled and sold the ADIRU's in the accident aircraft.

6.   At all times relevant hereto, defendant Honeywell owed a duty to plaintiffs and plaintiffs' decedents to use reasonable care in designing, manufacturing, assembling and selling the ADIRU's in the accident aircraft so as not to cause injury to, and the deaths of, plaintiffs' decedents.

7.   Defendant Honeywell negligently breached its duty of care owed to plaintiffs and plaintiffs' decedents through one or more of the following negligent acts and omissions:

(a)   negligently designed, manufactured, assembled and sold the ADIRU's in the accident aircraft such that the ADIRU's provided erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's air speed and angle of attack, to the accident aircraft's flight control computers;

(b)   negligently designed, manufactured, assembled and sold the ADIRU's in the accident aircraft such that the ADIRU's failed to filter out erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's air speed and angle of attack;

(c)   negligently designed, manufactured, assembled and sold the ADIRU's in the accident aircraft such that the ADIRU's in the accident aircraft did not have adequate protection against electromagnetic interference; and

(d)   negligently designed, manufactured, assembled and sold the ADIRU's in the accident aircraft such that the ADIRU's in the accident aircraft failed to contain any warnings of the above described defects.

8.   As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendant Honeywell, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft; and the accident aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

9.   Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

10.   Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Honeywell International for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT X

1-4.   As paragraphs 1 through 4 of Count X, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-8.   As paragraphs 5 through 8 of Count X, plaintiffs reallege paragraphs 5 through 8 of Count IX.

9.   As a further direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendant Honeywell which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

10.   Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Honeywell International for an amount in excess of

15

the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XI

1-4.    As paragraphs 1 through 4 of Count XI, plaintiffs reallege paragraphs 1 through 4 of Count I.

5.    On a date prior to December 28, 2014, defendants Thales Group and Thales USA, Inc. ("Thales") designed, manufactured, assembled and sold the pitot tubes and the software for the flight control computers on the accident aircraft.

6.    At the time the pitot tubes and the software for the flight control computers on the accident aircraft left the custody and control of defendants Thales, they were defective and unreasonably dangerous in one or more of the following respects, among other defects:

(a)    the pitot tubes were subject to becoming blocked or obstructed and provided erroneous information, including, but not limited to, erroneous information as to the accident aircraft's air speed, to the accident aircraft's ADIRU's and flight control computers;

(b)    the pitot tubes were subject to the accumulation of moisture and ice and failed to provide a safe means to warn of, and remove, such accumulation;

(c)    the pitot tubes did not contain any warnings of their defective conditions;

(d)    the software for the flight control computers failed to filter out erroneous data and spurious signals from the accident aircraft's ADIRU's, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's airspeed and angle of attack;

(e)    the software for the flight control computers commanded dangerous and improper flight control movements;

(f)    the software for the flight control computers allowed dangerous and unauthorized flight control movements; and

(g)    the software for the flight control computers did not contain any warnings of its defective conditions.

7.    As the direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions of the pitot tubes in the accident aircraft and the software for

the flight control computers in the accident aircraft, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

8.    Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

9.    Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Thales Group and defendant Thales USA, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XII

1-4.  As paragraphs 1 through 4 of Count XII, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-7.  As paragraphs 5-7 of Count XII, plaintiffs reallege paragraphs 5-7 of Count XI.

8.    As a further direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the pitot tubes on the accident aircraft and the software for the flight control computers in the accident aircraft which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple injuries of both a personal and

pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths and property damage.

9. Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Thales Group and Thales USA, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XIII

1-4. As paragraphs 1 through 4 of Count XIII, plaintiffs reallege paragraphs 1 through 4 of Count I.

5. On a date prior to December 28, 2014, defendants Thales Group and Thales USA, Inc. ("Thales") designed, manufactured, assembled and sold the pitot tubes and the software for the flight control computers in the accident aircraft.

6. At all times relevant hereto, defendants Thales owed a duty to plaintiffs and plaintiffs' decedents to use reasonable care in designing, manufacturing, assembling and selling the pitot tubes on the accident aircraft and the software for the flight control computers in the accident aircraft so as not to cause injury to, and the deaths of, plaintiffs' decedents.

7. Defendants Thales negligently breached their duty of care owed to plaintiffs and plaintiffs' decedents through one or more of the following negligent acts and omissions:

(a) negligently designed, manufactured, assembled and sold the pitot tubes on the accident aircraft such that the pitot tubes were subject to becoming blocked or obstructed and provided erroneous information, including, but not limited to, erroneous information as to the accident aircraft's air speed, to the accident aircraft's ADIRU's and flight control computers;

(b) negligently designed, manufactured, assembled and sold the pitot tubes on the accident aircraft such that the pitot tubes were subject to the accumulation of moisture and ice and failed to provide a safe means to warn of, and remove, such accumulation;

(c) negligently designed, manufactured, assembled and sold the pitot tubes on the accident aircraft such that the pitot tubes did not contain any warnings of their defective conditions;

(d) negligently designed, manufactured, assembled and sold the software for the flight control computers in the accident aircraft such that the software failed to filter out erroneous data and spurious signals from the accident aircraft's ADIRU's, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's airspeed and angle of attack;

(e) negligently designed, manufactured, assembled and sold the software for the flight control computers in the accident aircraft such that the software commanded dangerous and improper flight control movements;

(f) negligently designed, manufactured, assembled and sold the software for the flight control computers in the accident aircraft such that the software allowed dangerous and unauthorized flight control movements; and

(g) negligently designed, manufactured, assembled and sold the software for the flight control computers in the accident aircraft such that the software did not contain any warnings of its defective conditions.

8. As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendants Thales, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

9. Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

10. Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care,

comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Thales Group and defendant Thales USA, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XIV

1-4.  As paragraphs 1 through 4 of Count XIV, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-8.  As paragraphs 5 through 8 of Count XIV, plaintiffs reallege paragraphs 5 through 8 of Count XIII.

9.    As a further direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendants Thales which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

10.  Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Thales Group and defendant Thales USA, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XV

1-4.  As paragraphs 1 through 4 of Count XV, plaintiffs reallege paragraphs 1 through 4 of Count I.

5.    On a date prior to December 28, 2014, defendant Motorola, Inc. ("Motorola") designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft.

6. At the time the microprocessors in the ADIRU's and flight control computers left the custody and control of defendant Motorola, they were defective and unreasonably dangerous in one or more of the following respects, among other defects:

(a)   the microprocessors in the ADIRU's in the accident aircraft created and allowed erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's air speed and angle of attack, to be provided to the ADIRU's in the accident aircraft;

(b)   the microprocessors in the ADIRU's in the accident aircraft prevented the software in the ADIRU's from functioning properly;

(c)   the microprocessors in the flight control computers in the accident aircraft created and allowed erroneous data and spurious signals to be provided to the flight control computers, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's air speed and angle of attack;

(d)   the microprocessors in the accident aircraft's flight control computers prevented the software in the flight control computers from functioning properly;

(e)   the microprocessors in the ADIRU's and flight control computers in the accident aircraft did not have adequate protection from electromagnetic interference; and

(f)   the microprocessors in the ADIRU's and flight control computers in the accident aircraft did not contain any warnings of the above described defects.

7.    As the direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions in the microprocessors in the ADIRU's and flight control computers in the accident aircraft, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed,

resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

8.    Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

9.    Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Motorola, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XVI

1-4.  As paragraphs 1 through 4 of Count XVI, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-7.  As paragraphs 5 through 7 of Count XVI, plaintiffs reallege paragraphs 5 through 7 of Count XV.

8.    As the direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the microprocessors in the ADIRU's and flight control computers in the accident aircraft which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

9. Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Motorola, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XVII

1-4. As paragraphs 1 through 4 of Count XVII, plaintiffs reallege paragraphs 1 through 4 of Count I.

5. On a date prior to June 1, 2009, defendant Motorola, Inc. ("Motorola") designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft.

6. At all times relevant hereto, defendant Motorola owed a duty to plaintiffs and plaintiffs' decedents to use reasonable care in designing, manufacturing, assembling and selling the microprocessors in the ADIRU's and flight control computers in the accident aircraft so as not to cause injury to, and the deaths of, plaintiffs' decedents.

7. Defendant Motorola negligently breached its duty of care owed to plaintiffs and plaintiffs' decedents through one or more of the following negligent acts and omissions:

(a) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the ADIRU's in the accident aircraft created and allowed erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's air speed and angle of attack, to be provided to the ADIRU's on the accident aircraft;

(b) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the ADIRU's prevented the software in the ADIRU's from functioning properly;

(c) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the flight control computers in the accident aircraft created and allowed erroneous data and spurious signals to be provided to the flight control computers, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's air speed and angle of attack;

(d) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the accident aircraft's flight control computers prevented the software in the flight control computers from functioning properly;

(e) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the ADIRU's and flight control computers in the accident aircraft did not have adequate protection from electromagnetic interference; and

(f) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the ADIRU's and flight control computers in the accident aircraft did not contain any warnings of the above described defects.

8.    As the direct and proximate result of one or more of the foregoing negligent acts and omissions of defendant Motorola, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

9.    Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

10.   Plaintiffs  and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

24

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Motorola, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XVIII

1-4.  As paragraphs 1 through 4 of Count XVIII, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-7.  As paragraphs 5 through 7 of Count XVIII, plaintiffs reallege paragraphs 5 through 7 of Count XVII.

8.  As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendant Motorola which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

9.  Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Motorola, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XIX

1-4.  As paragraphs 1 through 4 of Count XIX, plaintiffs reallege paragraphs 1 through 4 of Count I.

5.    On a date prior to December 28, 2014, defendant Hamilton Sundstrand Corporation ("Hamilton Sundstrand") designed, manufactured, assembled and sold the sidestick control and angle of attack sensors in the accident aircraft.

6.    At the time the sidestick control and angle of attack sensors in the accident aircraft left the custody and control of defendant Hamilton Sundstrand they were defective and unreasonably dangerous in one or more of the following respects, among other defects:

(a)    the sidestick control provided erroneous information to the flight control computers; and

(b)    the sidestick control did not have any warnings of the aforesaid defective conditions;

(c)    the angle of attack sensors provided erroneous information to the ADIRU's and flight control computers;

(d)    the angle of attack sensors failed to correct and filter out erroneous information provided to the aircraft's ADIRU's and flight control computers; and

(e)    the angle of attack sensors failed to contain any warnings of the above described defects.

7.    As the direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions of the sidestick control and angle of attack sensors in the accident aircraft, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

8.    Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

9.    Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care,

comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Hamilton Sundstrand Corporation for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XX

1-4.  As paragraphs 1 through 4 of Count XX, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-7.  As paragraphs 5-7 of Count XX, plaintiffs reallege paragraphs 5-7 of Count XIX.

8.  As a further direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the sidestick control and angle of attack sensors in the accident aircraft which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

9.  Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Hamilton Sundstrand Corporation for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XXI

1-4.  As paragraphs 1 through 4 of Count XXI, plaintiffs reallege paragraphs 1 through 4 of Count I.

5.    On a date prior to December 28, 2014, defendant Hamilton Sundstrand Corporation ("Hamilton Sundstrand") designed, manufactured, assembled and sold the sidestick control and angle of attack sensors in the accident aircraft.

6.    At all times relevant hereto, defendant Hamilton Sundstrand owed a duty to plaintiffs and plaintiffs' decedents to use reasonable care in designing, manufacturing, assembling and selling the sidestick control and angle of attack sensors in the accident aircraft so as not to cause injury to, and the deaths of, plaintiffs' decedents.

7.    Defendant Hamilton Sundstrand negligently breached its duty of care owed to plaintiffs and plaintiffs' decedents through one or more of the following negligent acts and omissions:

   (a)  negligently designed, manufactured, assembled and sold the sidestick control in the accident aircraft such that the sidestick control provided erroneous information to the flight control computers; and

   (b)  negligently designed, manufactured, assembled and sold the sidestick control in the accident aircraft such that the sidestick control did not have any warnings of the aforesaid defective conditions.

   (c)  negligently designed, manufactured, assembled and sold the angle of attack sensors such that the angle of attack sensors provided erroneous information to the ADIRU's and flight control computers;

   (d)  negligently designed, manufactured, assembled and sold the angle of attack sensors such the angle of attack sensors failed to correct and filter out erroneous information provided to the aircraft's ADIRU's and flight control computers; and

   (e)  negligently designed, manufactured, assembled and sold the angle of attack sensors such that the angle of attack sensors failed to contain any warnings of the above described defects.

8.    As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendant Hamilton Sundstrand, the accident aircraft was caused to go into a steep

28

high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

9.   Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

10.   Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Hamilton Sundstrand Corporation for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XXII

1-4.  As paragraphs 1 through 4 of Count XXII, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-8.  As paragraphs 5 through 8 of Count XXII, plaintiffs reallege paragraphs 5 through 8 of Count XXI.

9.   As a further direct and proximate result of one or more of the foregoing negligent acts and omissions of defendant Hamilton Sundstrand which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal

and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

10.   Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Hamilton Sundstrand Corporation for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XXIII

1-4.   As paragraphs 1 through 4 of Count XXIII, plaintiffs reallege paragraphs 1 through 4 of Count I.

5.   On a date prior to December 28, 2014 defendant Goodrich Corp. ("Goodrich") designed, manufactured, assembled and sold the in-flight ice detection system and the servo valve on the yaw damper for the accident aircraft.

6.   At the time the in-flight ice detection system and servo valve for the yaw damper on the accident aircraft left the control of defendant Goodrich they were defective and unreasonably dangerous in one or more of the following respects, among other defects:

(a)   the ice detection system failed to detect and warn of the accumulation of ice in critical parts of the aircraft, including, but not limited to, the engines; and

(b)   the servo valve for the yaw damper was subject to failure, resulting in a loss of control of the aircraft;

(c)   the in-flight ice detection system and servo valve for the yaw damper failed to contain any warnings of the above described defects.

7.   As the direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions of the in-flight ice detection system and servo valve for the

30

yaw damper on the accident aircraft, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

8.    Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

9.    Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Goodrich Corp. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XXIV

1-4.  As paragraphs 1 through 4 of Count XXIV, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-7.  As paragraphs 5-7 of Count XXIV, plaintiffs reallege paragraphs 5-7 of Count XXIII.

8.    As a further direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the in-flight ice detection system and servo valve for the yaw damper on the accident aircraft which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary

nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

9. Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor against defendant Goodrich Corp. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XXV

1-4. As paragraphs 1 through 4 of Count XXV, plaintiffs reallege paragraphs 1 through 4 of Count I.

5. On a date prior to June 1, 2009, defendant Goodrich Corp. ("Goodrich") designed, manufactured, assembled and sold the in-flight ice detection system and the servo valve for the yaw damper on the accident aircraft.

6. At all times relevant hereto, defendant Goodrich owed a duty to plaintiffs and plaintiffs' decedents to use reasonable care in designing, manufacturing, assembling and selling the in-flight ice detection system and servo valve for the yaw damper on the accident aircraft so as not to cause injury to, and the deaths of, plaintiffs' decedents.

7. Defendant Goodrich negligently breached its duty of care owed to plaintiffs and plaintiffs' decedents through one or more of the following negligent acts and omissions:

   (a) negligently designed, manufactured, assembled and sold the in-flight ice detection system such the ice detection system failed to detect and warn of the accumulation of ice in critical parts of the aircraft, including, but not limited to, the engines;

   (b) negligently designed, manufactured, assembled and sold the servo valve for the yaw damper on the aircraft such that it was subject to failure, resulting in a loss of control; and

(c) negligently designed, manufactured, assembled and sold the in-flight ice detection system and the servo valve for the yaw damper such that the in-flight ice detection system and the servo valve for the yaw damper failed to contain any warnings of the above described defects.

8.   As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendant Goodrich, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

9.   Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

10.  Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant Goodrich Corp. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## **COUNT XXVI**

1-4.  As paragraphs 1 through 4 of Count XXVI, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-8.  As paragraphs 5 through 8 of Count XXVI, plaintiffs reallege paragraphs 5 through 8 of Count XXV.

9.    As a further direct and proximate result of one or more of the foregoing negligent acts and omissions of defendant Goodrich which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

10.   Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor against defendant Goodrich Corp. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XXVII

1-4.  As paragraphs 1 through 4 of Count XXVII, plaintiffs reallege paragraphs 1 through 4 of Count I.

5.    On a date prior to December 28, 2014 defendant GE Aviation Systems, LLC ("GE"), together with defendants Thales Group and Thales USA, Inc. ("Thales"), designed, manufactured, assembled and sold the Flight Augmentation Computers (FAC) on the accident aircraft.

6.    At the time the FAC's on the accident aircraft left the control of defendants GE and Thales, they were defective and unreasonably dangerous in one or more of the following respects, among other defects:

(a)  the accident aircraft's FAC's were subject to failure and when they failed, the rudder limiter system, including the rudder and yaw damper, would fail, resulting in a loss of control; and

(b)  the FAC's failed to contain any warnings of the above described defects.

7.    As the direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions of the FAC's on the accident aircraft, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

8.    Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

9.    Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant GE Aviation Systems, LLC, defendant Thales Group and defendant Thales USA, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XXVIII

1-4.  As paragraphs 1 through 4 of Count XXVIII, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-7.  As paragraphs 5-7 of Count XXVIII, plaintiffs reallege paragraphs 5-7 of Count XXVII.

8.    As a further direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the FAC's on the accident aircraft which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple and diverse

injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

9.    Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor against defendant GE Aviation Systems, LLC, defendant Thales Group and defendant Thales USA. Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT XXIX

1-4.  As paragraphs 1 through 4 of Count XXIX, plaintiffs reallege paragraphs 1 through 4 of Count I.

5.    On a date prior to December 28, 2014, defendant GE Aviation Systems, LLC ("GE"), together with defendants Thales Group and Thales USA, Inc. ("Thales") designed, manufactured, assembled and sold the Flight Augmentation Computers (FAC) on the accident aircraft.

6.    At all times relevant hereto, defendants GE and Thales owed a duty to plaintiffs and plaintiffs' decedents to use reasonable care in designing, manufacturing, assembling and selling the FAC's on the accident aircraft so as not to cause injury to, and the deaths of, plaintiffs' decedents.

7.    Defendants GE and Thales negligently breached their duty of care owed to plaintiffs and plaintiffs' decedents through one or more of the following negligent acts and omissions:

(a)    negligently designed, manufactured, assembled and sold the FAC's such that they were subject to failure and when they failed, the rudder limiter system, including the rudder and yaw damper, would fail, resulting in a loss of control; and

(b)    negligently failed to warn of the above described defects.

8.   As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendants GE and Thales, the accident aircraft was caused to go into a steep high speed climb, followed by a high altitude stall; the two Flight Augmentation Computers both failed, resulting in a loss of the autopilot and a failure of the rudder limiter system and a loss of rudder and yaw control; the flight crew could not regain control of the accident aircraft and the aircraft crashed into the Java Sea, killing all those onboard, including plaintiffs' decedents.

9.   Plaintiffs' decedents left surviving heirs and next of kin, including plaintiffs, for whose benefit this action is brought.

10.   Plaintiffs and the other heirs and next of kin of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor and against defendant GE Aviation Systems, LLC, defendant Thales Group and defendant Thales USA, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## **COUNT XXX**

1-4.   As paragraphs 1 through 4 of Count XXX, plaintiffs reallege paragraphs 1 through 4 of Count I.

5-8.   As paragraphs 5 through 8 of Count XXX, plaintiffs reallege paragraphs 5 through 8 of Count XXIX.

9.   As a further direct and proximate result of one or more of the foregoing negligent acts and omissions of defendants GE and Thales which resulted in the crash of the accident aircraft, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and

pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

10.    Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, plaintiffs, through their undersigned counsel, pray for the entry of a judgment in their favor against defendant GE Aviation Systems, LLC, defendant Thales Group and defendant Thales USA, Inc. for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

Respectfully submitted,

_____/s/Floyd A. Wisner_____
Attorney For Plaintiffs

Wisner Law Firm, P.C.
514 W. State Street
Suite 200
Geneva, Illinois  60134
(630) 262-9434
(630) 262-1066 (fax)
faw@wisner-law.com
Ill. ID No. 3048713

James Healy-Pratt
Stewarts Law, LLP
5 New Street Square
London EC4A 3BF
United Kingdom
(pro hac vice application pending)
