IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARIS SISWANTO, Personal Representative of the Heirs of MRS. SUSIYAH, deceased, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 15-cv-5486 |
| AIRBUS, S.A.S., a corporation, et al., | ) ) | Hon. John Robert Blakey |
| Defendants | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT AIRBUS, S.A.S.'
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Page**

I.   Introduction…………………………………………………………………………1

II.  The MMJTA – Subject Matter Jurisdiction, Statutory Personal
     Jurisdiction, And Venue…………………………………………………………..2

III. Airbus Is Subject To The Federal Statutory Jurisdiction Of This Court……………………3

     A.   The MMTJA Nationwide Service of Process Provision Gives This Court
          the Power to Exercise Personal Jurisdiction Over Airbus……………………………3

     B.   This Court's Exercise Of Personal Jurisdiction Over Airbus Comports
          With Due Process Since Venue Is Proper Under The MMTJA………………………6

     C.   Airbus Has National Contacts Sufficient To Satisfy The Due Process Clause………...8

III. Dismissing Airbus Would Set Precedent That Airbus Is Exempt From Claims
     Under The MMTJA…………………………………………………………………...13

VI.  If this Court finds that Airbus's national contacts are dispositive, plaintiffs should
     be permitted personal jurisdiction discovery……………………………………….......14

Conclusion…………………………………………………………………..……………...15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abelesz v. OTP Bank*, 692 F.3d 638 (7th Cir. 2012)……………………………………………..12

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004)……………3

*Airbus S.A.S. v. Aviation Partners, Inc.*, No. C12-1228JLR, 2012 WL 5295145 (W.D. Wash. Oct. 25, 2012)………………………………………………………………………………………14

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv.*, 788 F.2d 535 (9th Cir. 1986)……………………………………………………………………………………3

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)……………………………………………11, 12, 13

*ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997)……………………………...4, 6

*Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir. 1979)………………………………………4, 9, 12

*Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499 (N.D. Ill. Mar. 28, 2014)…………………………………………………………………………...…...........................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011)……………11, 12, 13

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868 (1984)…………………..12

*Hogue v. Milodon Eng'g, Inc.*, 736 F.2d 989 (4th Cir. 1984)…………………………...4, 6, 8, 12

*In re Testosterone Replacement Therapy Products Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2015 WL 5768574 (N.D. Ill. Sept. 30, 2015)………………......…15

*Indus. Models, Inc. v. SNF, Inc.*, No. 14 C 8340, 2015 WL 2399089 (N.D. Ill. May 18, 2015)…………………………………………7, 8

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 66 S. Ct. 154 (1945)…………………………………...…..............................................................6

*KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718 (7th Cir. 2013)…….4, 6, 7, 8, 14

*Mariash v. Morrill*, 496 F.2d 1138 (2d Cir. 1974)……………………………………………...4,8

*Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000)………………...…….4

*uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421 (7th Cir. 2010)……………………….………12

**Constitutional Provisions**

U.S. Const. amend. X………………………………………………………………………...2

U.S. Const. art. III…………………………………………………………………....1

**Statutes**

Multiparty, Multiforum, Trial Jurisdiction Act ("MMTJA") 28 U.S.C. § 1369………….…..1, 2

28 U.S.C. § 1391(g)……………………………………………………………….1, 3, 8

28 U.S.C. § 1697……………………………………………………………….1, 2, 6

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)(C)……………………………………………………3, 4

H.R. REP. 102-373, 102nd Cong. (1991)……………………………….…..2, 3, 13

Pub. L. No. 107-273 (2002)…………………………………………………….3

Plaintiffs, through undersigned counsel, submit this memorandum in opposition to defendant Airbus's motion to dismiss for lack of personal jurisdiction.

## I. Introduction

This action arises from the crash on December 28, 2014 into the Java Sea of a certain Airbus A320 aircraft that was being operated as AirAsia Flight 8501 from Surabaya, Indonesia to Singapore. All 155 passengers and seven crew members perished. Plaintiffs are the personal representatives of the heirs of the deceased passengers. The defendants are the aircraft manufacturer, engine manufacturer, and component parts manufacturers. Since this matter arises from an accident in a discrete location in which more than 75 people died, the Multiparty, Multiforum, Trial Jurisdiction Act of 2002 ("MMTJA") governs. 28 U.S.C. § 1369. By enacting the MMTJA, Congress not only established subject matter jurisdiction in the District Courts, but also established personal jurisdiction over defendants and proper venue. A defendant to a claim brought under the MMTJA is subject to the personal jurisdiction of every district court across the U.S. 28 U.S.C. § 1697. Further, venue is proper in any district in which any of the defendants reside. 28 U.S.C. § 1391(g).

Defendant Airbus, S.A.S. ("Airbus") manufactured the subject accident aircraft. Airbus does not contest that this Court has subject matter jurisdiction over plaintiffs' claims under the MMTJA. It only challenges this Court's ability to exercise personal jurisdiction over it. Airbus argues at length as to this Court's inability to exercise general personal jurisdiction or specific personal jurisdiction in the instant matter. Airbus completely ignores that personal jurisdiction in this case is neither general nor specific. Rather, personal jurisdiction over Airbus is based on the federal statutory personal jurisdiction granted to all district courts by Congress by the power vested in it under Article III of the U.S. Constitution. U.S. Const. art. III. The exercise of that statutory

jurisdiction over Airbus does not offend the Due Process Clause of the 5th Amendment since venue

is proper in the Northern District of Illinois and, moreover, Airbus has pervasive national contacts.

U.S. Const. amend. X. Therefore, plaintiffs respectfully submit that this Court should deny

Airbus's motion, or alternatively grant plaintiffs leave to conduct personal jurisdiction discovery.

## II.  The MMJTA – Subject Matter Jurisdiction, Statutory Personal Jurisdiction, And Venue

The MMJTA created original subject matter jurisdiction in the district courts over a narrow

class of actions:

> The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location.

28 U.S.C. § 1369.

Though the bill that later became the MMTJA was debated for decades, the purpose always

remained the same – to avoid lawsuits in numerous forums arising from the same mass-disaster.

Congress specifically considered airline disasters when initially debating the bill which eventually

became the MMJTA:

> The purpose of H.R. 2450–the Multiparty, Multiforum Jurisdiction Act of 1991–is to [create] Federal court jurisdiction to deal with problems of dispersed and complex litigation arising out of airline accidents…in which many people are killed or seriously injured in a single accident.

H.R. REP. 102-373, 102nd Cong. (1991).

In order to achieve the purpose of the MMTJA and secure every district court's reach over

all parties to a claim under the Act, Congress included a nationwide service of process provision:

> When the jurisdiction of the district court is based in whole or in part upon section 1369 of this title, process…may be served at any place within the United States, or anywhere outside the United States if otherwise permitted by law.

28 U.S.C. § 1697.

Additionally, Congress amended the venue statute, 28 U.S.C. § 1391 so as to include rules specific to the venue of a claim filed under the MMTJA:

> (g) Multiparty, multiforum litigation--A civil action in which jurisdiction of the district court is based upon section 1369 of this title may be brought in any district in which any defendant resides or in which a substantial part of the accident giving rise to the action took place.

Pub. L. No. 107-273 (2002)

Congress explained the relationship between Sections 1367 and 1391(g):

> The broader venue scope that the language "any defendant" provides, along with nationwide service of process provision will allow potential defendants not living in the State where the action is filed to be brought in at the action's inception, thus avoiding a multiplicity of suits in different States.

H.R. REP. 102-373, 102nd Cong. (1991).

Since the MMTJA delineates subject matter jurisdiction, personal jurisdiction and venue, the MMJTA is the authority, and the only authority, that guides the district court as to whether it has subject matter jurisdiction over the claim, whether personal jurisdiction may be exercised over the defendants, and whether venue is proper in that district.

## III. Airbus Is Subject To The Federal Statutory Jurisdiction Of This Court

### A. The MMTJA Nationwide Service of Process Provision Gives This Court the Power to Exercise Personal Jurisdiction Over Airbus

A statutory basis for exercising personal jurisdiction may be found in a statute providing for service of process. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004). "A federal court obtains personal jurisdiction over a defendant if it is able to serve process on him." *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv.*, 788 F.2d 535, 538 (9th Cir. 1986). This notion is codified in Federal Rule of Civil Procedure 4 which states, "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant…when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1)(C)

Rule 4(k)(1)(C) reflects Congress's ability to enact "special federal rules for establishing personal jurisdiction, venue, or both." *KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013). Congress has the authority to guarantee that the district in which a designated federal claim is brought can ensure the attendance of all necessary parties through nationwide, or in the case of the MMTJA – worldwide, service of process. *Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir. 1979). Congressional power to authorize nationwide service of process in cases involving the enforcement of federal law is beyond question. *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974). If the statute under which the claim is brought provides for nationwide service of process, as Section 1697 of the MMTJA does, personal jurisdiction over the defendant exits in any federal district court. *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997).

Courts have unequivocally found that in the numerous statutes where Congress has provided for nationwide service of process, nationwide personal jurisdiction is created. For instance, the Court in *Hogue v. Milodon Eng'g, Inc.*, 736 F.2d 989, 991 (4th Cir. 1984), analyzed whether Bankruptcy Rule 704, which provided for service of process anywhere in the United States, established nationwide personal jurisdiction. The Court held:

> Where Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant.

*Id.* Courts interpreting similar sections have found the same. *E.g. ESAB*, 126 F.3d at 627 (Applying the RICO Act); *KM Enterprises*, 725 F.3d at 724 (Applying the Clayton Act), *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (Applying ERISA).

The foregoing cases concerning similar nationwide service of process provisions of other federal statutes conclusively establish that nationwide service of process is equivalent to

nationwide personal jurisdiction. Like Section 12 of the Clayton Act, Section 1697 of the MMTJA provides for *worldwide* service of process, and thus nationwide personal jurisdiction over extraterritorial defendants like Airbus.

Airbus does not contest that this matter arises from a single accident, the crash of AirAsia Flight 8501, at a discrete location, the Java Sea, in which all 162 persons on board perished and thus this Court has subject matter jurisdiction under the MMTJA. Further, by briefly acknowledging that the MMTJA provides for nationwide service of process, Airbus implicitly admits that there is nationwide personal jurisdiction. It even correctly states that the only relevant contacts are those that it has with the United States as a whole. However, all subsequent analysis by Airbus is off the mark in every respect.

Airbus focuses its entire brief on plaintiffs' failure to establish specific personal jurisdiction under the Illinois Long-Arm Statute or general jurisdiction under recent U.S. Supreme Court decisions. Airbus at no point acknowledges that in the case where personal jurisdiction is created by statute there is a third method of establishing personal jurisdiction: federal statutory personal jurisdiction. Every single one of the twenty-eight cases cited by Airbus were based on either specific personal jurisdiction or general personal jurisdiction. Airbus did not cite to one case in which federal statutory personal jurisdiction was analyzed, despite acknowledging that the MMTJA provides for nationwide service of process and thus nationwide statutory personal jurisdiction.

Airbus either outright disregarded the entire province of case law concerning statutory personal jurisdiction or it has a devastating misunderstanding of the MMTJA and statutes with similar personal jurisdiction provisions. Any federal district has jurisdictional reach over Airbus since process may be served "any place within the United States, *or anywhere outside of the United*

*States* if permitted by law." 28 U.S.C. § 1697 (emphasis added). This section provides for "nationwide *(indeed worldwide)* service of process and therefore nationwide personal jurisdiction." *KM Enterprises, Inc.*, 725 F.3d at 724. (emphasis added). Of course, this Court's exercise of personal jurisdiction over Airbus must comport with Due Process.

**B.    This Court's Exercise Of Personal Jurisdiction Over Airbus Comports With Due Process Since Venue Is Proper Under The MMTJA**

Under the Due Process clause, exercise of statutory personal jurisdiction over Airbus must comport with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 66 S. Ct. 154, 158 (1945). Congressional authority to establish nationwide (in this case, worldwide) service of process and thus nationwide personal jurisdiction guides the courts faced with whether the exercise of federal statutory personal jurisdiction violates the Due Process. *See ESAB*, 126 F.3d at 627 (Congressional policy electing for nationwide service of process is entitled to "substantial weight"), *citing* 4 Wright & Miller, § 1067.1, at 331 (1987). Therefore, statutory personal jurisdiction should only be prohibited where "such extreme inconvenience or unfairness…would outweigh the congressionally articulated policy of allowing the assertion of *in personam* jurisdiction." *Id.*

General personal jurisdiction and federal statutory personal jurisdiction differ in that the constitutionality of the latter is rooted in whether venue is proper. In order to protect a defendant from having to defend claims across the U.S., venue acts as a constitutional safeguard to limit where a defendant is subject to statutory personal jurisdiction when the statute provides for nationwide personal jurisdiction. *Hogue*, 736 F.2d at 991 (The "defendant must look primarily to federal venue requirements for protection from onerous litigation" when jurisdiction is based on nationwide service of process.) Therefore, as the 7th Circuit held in *KM Enterprises*, the valid exercise of statutory personal jurisdiction requires that venue provision *under that statute* must be

met. 725 F.3d at 730. Only if venue is not proper in accordance with the statute, must the plaintiff establish specific personal jurisdiction or general personal jurisdiction. *Id.*

This Court applied the same rationale when faced with a nearly identical issue in *Indus. Models, Inc. v. SNF, Inc.*, No. 14 C 8340, 2015 WL 2399089, at *3 (N.D. Ill. May 18, 2015). In *Indus. Models*, the plaintiff sought damages under the Clayton Act for a violation of the Sherman Act. *Id.* at *1. The defendant, a Texas corporation, filed a motion to dismiss for lack of personal jurisdiction or, alternatively, a motion to transfer venue. *Id.* at *2. This Court began its analysis by noting that while generally personal jurisdiction is established by specific personal jurisdiction (under the long-arm statute) or general jurisdiction (contacts rendering the defendant at home in the forum), there is a third method by which a district court may exercise personal jurisdiction: federal statutory personal jurisdiction. *Id.* at *3. Since the Clayton Act mandated nationwide service of process, it established nationwide personal jurisdiction. However, this Court cautioned that nationwide personal jurisdiction does not amount to nationwide venue - "it falls well short of providing universal venue in every judicial district in the United States." *Id., quoting KM Enterprises,* 725 F.3d at 725. This Court found that under the circumstances, venue was not proper pursuant to the Clayton Act. *Id.* at *5. However, that did not entitle the Texas defendant to the grant of a dismissal order since personal jurisdiction could be exercised nationwide and venue would be proper in another district.

The standard for valid exercise of statutory personal jurisdiction by a district court is readily met in the case at bar. As the 7th Circuit held in *KM Enterprises, Inc.*, *supra*, and this Court held in *Indus. Models*, *supra*, if the statute which provides for personal jurisdiction also provides for venue, then the provisions must be read in conjunction in order for a district court to exercise statutory personal jurisdiction. The venue provision of the Federal Code specifically provides that

venue for claims brought under the MMTJA is proper "in *any district in which any defendant resides.*" 28 U.S.C. § 1391(g) (emphasis added).

Motorola, Inc. ("Motorola") has been named as a defendant (Count XV-XVIII of Plfs.' Second Amended Complaint, Dkt. #32). Motorola, upon information and belief, is an Illinois corporation with its headquarters in Schaumburg, Illinois, clearly within the Northern District of Illinois. Thus, venue is proper in the Northern District of Illinois since it is a district "in which any defendant resides." 28 U.S.C. § 1391(g). Since venue is proper in this District, this Court's exercise of statutory personal jurisdiction over Airbus comports with the Due Process Clause. *See Hogue*, 736 F.2d at 991, *KM Enterprises*, 725 F.3d at 730; *Indus. Models*, 2015 WL 2399089, at *3.

### C. Airbus Has National Contacts Sufficient To Satisfy The Due Process Clause

If this Court is to consider Airbus's contacts in its analysis of the constitutionality of statutory personal jurisdiction, the only relevant contacts are those with the U.S. The Court in *Mariash* was faced with the issue of relevant contacts in analyzing statutory personal jurisdiction pursuant to the nationwide service of process provision of The Securities Exchange Act of 1934. 496 F.2d at 1140. The defendants argued that the exercise of personal jurisdiction was only constitutional if the defendants had minimal contacts with the *state* in which the district sat. *Id.* at 1143. The Court outright rejected the argument, finding that only national contacts were relevant. The Court held that it is the U.S. that would be exercising jurisdiction over the enforcement of a federal claim "[a]nd plainly, where, as here, the defendants reside within the territorial boundaries of the United States, the 'minimal contacts,' required to justify the federal government's exercise of power over them, are present." *Id.*

That is not to say that federal statutory jurisdiction exercised over a U.S.-resident defendant is constitutional and statutory jurisdiction over an extraterritorial defendant is not. Rather, "it is

only the latter, quite simply, which even raises a question of the forum's power to assert control over the defendant." *Fitzsimmons*, 589 F.2d at 334. Thus, the court *may* consider the defendant's national contacts when analyzing statutory personal jurisdiction over a foreign defendant.

Should this Court consider Airbus's national contacts in addition to venue being proper, the exercise of statutory personal jurisdiction still accords with Due Process. As discussed above and acknowledged by Airbus, the relevant contacts are not those with the state in which the district sits, Illinois, but rather contacts with the United States as a whole. *Mariash*, 496 F.2d at 1143. Airbus's national contacts are pervasive – it sells to, purchases from, and even conducts manufacturing operations in the United States. Airbus's declarant stated that 811 Airbus aircrafts were sold to U.S. customers in the last 10 years. (Ex. A to Deft. Brief, Bondergaard Decl. ¶19, Dkt. #43-1). Airbus's website[1] contains a customer list which includes numerous air carriers that fly to the U.S. as well as air carriers that are based in the U.S. (Ex. A Airbus.com - "Airbus Customers & Operators List") In fact, Airbus has an entire page on its website entitled, "Airbus in the U.S. – A Major Presence in One of the World's Key Markets." According to Airbus's website:

> over 1,300 Airbus jetliners [operate] in the fleet of North American airlines…more than 1,900 Airbus aircraft have been ordered in North American from customers that include American Airlines, Delta Air Lines, FedEx, Frontier Airlines, GECAS, Hawaiian Airlines, ILFC, JetBlue Airways, Spirit Airlines, United Airlines, UPS, US Airways and Virgin America.

(Ex. B Airbus.com - "Airbus in the U.S. – A Major Presence in One of the World's Key Markets")

The above-listed customers are headquartered throughout the nation – American Airlines (Texas), Delta Air Lines (Georgia), FedEx (Tennessee), Frontier Airlines (Colorado), GECAS (Connecticut), Hawaiian Airlines (Hawaii), ILFC (California), JetBlue Airways (New York),

---

[1] The website is copyrighted by Airbus, S.A.S.

Spirit Airlines (Florida), United Airlines (Illinois), UPS (Georgia), US Airways (Arizona), Virgin America (California).

Not only does Airbus sell its aircrafts to U.S. customers, it purchases materials from U.S. retailers. "For the production of its jetliners, Airbus spends 42 percent of its aircraft-related procurement in the U.S. – buying more parts, components, tooling and other material from the U.S. than any other country." Airbus has spent billions of dollars doing business in the U.S. – "[s]ince 1990, Airbus has spent more than $150 billion in the U.S. with hundreds of American suppliers." Further, Airbus manufactures aircraft in the U.S. – "Workers in more than 40 states help build Airbus aircraft, supporting 245,000 high-quality jobs across the U.S. *Airbus is the largest export customer for the United States aerospace industry.*" (Ex. B) (emphasis added). Also, Airbus is regulated by the FAA has it has issued a type certificate for at least one Airbus aircraft. (Ex. C Airbus.com – "Airbus A380 Receives Joint EASA and FAA Type Certification")

Airbus also has U.S. subsidiaries, including Airbus Americas[2]. Airbus Americas opened the Airbus U.S. Manufacturing Facility located in Mobile, Alabama where A320s, the same family line of aircraft as the accident aircraft, are assembled. Airbus vaults its U.S. presence on its website:

> The U.S.-based Airbus Americas has an expanding presence in an important aviation and aerospace marketplace…..Other Airbus locations in the U.S. are: the headquarters of Airbus Americas in Herndon, Virginia, engineering centres in Mobile, Alabama and Wichita, Kansas; an aircraft spares centre in Ashburn, Virginia; a training centre in Miami, Florida; and a regulatory and government liaison office in Washington, D.C.

---

[2] Airbus Americas was a defendant in this action. Plaintiffs' counsel reached an agreement with counsel for Airbus whereby Airbus would waive formal service pursuant to Fed. R. Civ. P. 4 and would appear voluntarily and plaintiffs would dismiss Airbus Americas. Plaintiffs' counsel did so with the understanding that Airbus would not contest jurisdiction. In the several prior cases involving Airbus and these plaintiffs' counsel, Airbus never has contested jurisdiction after entering into this agreement with plaintiffs.

(Ex. D Airbus.com – "Airbus Americas – Serving Airlines Across the Americas)

Airbus asserts that Airbus Americas and other Airbus U.S. subsidiaries are separate entities whose presence in the U.S. is not relevant. However, Airbus's website does not state that all the above sales, purchases, and employment in the U.S. is through Airbus Americas and other Airbus subsidiaries.[3] Moreover, it is unlikely that the 1,300 Airbus jetliners operating in the U.S. and the 1,900 Airbus jetliners purchased by U.S. customers were all manufactured in the U.S. as the U.S. Airbus manufacturing facility. – the Airbus U.S. Manufacturing Facility located in Mobile, Alabama – just "commenced aircraft assembly in July 2015." (Ex. D)

Even if some of the many national contacts Airbus has with the U.S. are based on the business of Airbus U.S. subsidiaries, the contacts of those subsidiaries are imputed to Airbus. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 750 (2014) (In analyzing general personal jurisdiction, the Court considered the contacts of defendant's subsidiary with the forum). In a case cited by Airbus, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, the Court left open the ability of a court to consider a parent company and its subsidiaries as a "single enterprise" such that the parent company's contacts with the forum could be used to establish general jurisdiction over the foreign subsidiary. 131 S. Ct. 2846, 2867 (2011). Plaintiffs argue a slight variation in the case at bar. It is not the parent corporation's contacts that should be imputed to the subsidiary. Rather, it is the contacts of the U.S.-based subsidiaries, including Airbus Americas, that should be imputed to the parent corporation, Airbus. Airbus derives a monumental financial benefit from the sales, purchases, and manufacturing activities in the U.S. It has directed its activities to the U.S. and has reaped the benefits of the U.S. market. Thus, it is fair for this U.S. federal district court to exercise

---

[3] Interestingly, the website states that Airbus Americas has 1,100 employees in the U.S. (Ex. D) Yet, it also states that *Airbus* provides 245,000 jobs in the U.S. (Ex. B)

its statutory personal jurisdiction in the proper venue over Airbus in the litigation of a claim involving the crash of one its A320 aircrafts since Airbus has abundant national contacts.

It is not necessary that plaintiffs demonstrate that Airbus is "at home" in the U.S. as the standard for general jurisdiction is inapplicable to a claim under the MMTJA. It would be reversible error for this Court to apply principles guiding the exercise of specific or general jurisdiction to plaintiffs' claims. *See Fitzsimmons*, 589 F.2d at 331. While the Court may consider Airbus's national contacts should it find that the venue provision is not an adequate constitutional safeguard, the cases cited by Airbus in which non-claim specific contacts are analyzed are all cases in which the exercise of *general personal jurisdiction* was contested. Thus, the standard set forth in those cases is inapplicable. *See e.g. Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868, 1874 (1984); *Goodyear*, 131 S. Ct. at 2851; *Abelesz v. OTP Bank*, 692 F.3d 638, 653 (7th Cir. 2012); *Daimler*, 134 S. Ct. at 760. Unlike the cases cited by Airbus, the issues involved in this matter are "national in nature" and thus the constitutionality of jurisdiction over Airbus under federal law should not "be tested by the same yardstick." *Hogue*, 736 F.2d at 991.

As the 7th Circuit pointed out in *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010), one of the cases cited by Airbus, such contacts are analyzed when the statute under which the federal claim was filed does *not* provide for nationwide service of process and thus jurisdiction must be established through the long-arm statute or through general jurisdiction.[4]

Statutory personal jurisdiction over an extraterritorial defendant may raise the question of contacts, *Fitzsimmons*, 589 F.2d at 334, however, Airbus has cited no case where the contacts necessary to establish general jurisdiction are the same contacts necessary to exercise statutory

---

[4] Defendant Airbus's reliance on this case, and all other cases cited to in its brief, is perplexing as it acknowledged that the MMTJA provides for nationwide service of process. (Deft. brief. P. 4; Dkt. # 23)

personal jurisdiction over an extraterritorial defendant. Indeed the application of the recent general jurisdiction cases would be illogical to statutory nationwide personal jurisdiction. The Court in *Goodyear*, *supra*, and *Daimler*, *supra*, explained that general jurisdiction over a corporation is generally limited to its place of incorporation or its principal place of business because, otherwise, a corporate defendant would be subject to litigation in numerous states in which it conducts business. Thus, the Court sought to restrict the exercise of general jurisdiction so that a corporate defendant would only be amenable to suit in perhaps two jurisdictions.

By enacting the nationwide service of process provision in the MMTJA, Congress explicitly intended to confer personal statutory jurisdiction on all district courts nationwide. To apply a test which seeks to limit general personal jurisdiction to a statute which explicitly seeks to expand statutory personal jurisdiction in district courts would be nonsensical. More importantly, it would disregard Congressional intent and defeat the purpose of the MMTJA. It was explicitly stated in the legislative history that the nationwide service of process provision, Section 1697, and the venue provision, Section 1391(g), were included so that defendants that are not residents of the state in which the district sits would nonetheless be subject to the jurisdiction of the district. H.R. REP. 102-373, 102nd Cong. (1991). The Court's intention to limit general jurisdiction in *Goodyear, supra,* and *Daimler, supra,* is wholly contrary to Congressional intent to expand statutory jurisdiction under the MMTJA.

## III. Dismissing Airbus Would Set Precedent That Airbus Is Exempt From Claims Under The MMTJA

The sweeping effect of this Court's grant of dismissal would render the MMTJA useless as applied to Airbus, the largest manufacturer of aircrafts operating in the U.S. (Ex. B). The MMTJA was enacted so that major disasters, like airline crashes, could be litigated in the federal forum. H.R. REP. 102-373, 102nd Cong. (1991). In a claim such as this, where an Airbus aircraft crashed

in a discrete location killing all 162 persons on board due to an alleged product defect, Airbus, the manufacturer, is a necessary party. By granting Airbus's motion, this Court would be creating an inequitable loophole, whereby Airbus would elude prosecution of a claim in a federal court arising from the crash of its own aircraft, even if all passengers on board were American. In Section 1367, Congress not only established nationwide service, but also worldwide service. *See KM Enterprises, Inc.*, 725 F.3d at 724. Congress clearly intended on bringing extraterritorial defendants before federal courts in which a claim under the MMTJA was brought. The MMTJA provides for special rules when litigating claims arising from certain disasters, such as major airline crashes. Airbus is subject to those rules just as much as the other defendants. To hold Airbus, the aircraft manufacturer, to a standard that renders in impervious to MMTJA claims, while expecting U.S. component manufacturers to defend to those claims, would be unfair, inequitable, and an injustice.

Exempting Airbus from federal courts' reach under a very specific class of actions arising from major-disasters in which 75 or more persons on its aircraft died, would be particularly unjust considering Airbus has reaped the benefits of a U.S. forum on at least one occasion. *Airbus S.A.S. v. Aviation Partners, Inc.*, No. C12-1228JLR, 2012 WL 5295145, at *1 (W.D. Wash. Oct. 25, 2012). It is disingenuous at best for Airbus to argue that it would offend traditional notions of fair play and substantial justice to have to defend against plaintiffs' claims under the MMTJA in a country where it has pursued litigation to protect its own business interest. *Id.*

## VI. If this Court finds that Airbus's national contacts are dispositive, plaintiffs should be permitted personal jurisdiction discovery

If this Court finds that Airbus's national contacts are dispositive on the issue of personal jurisdiction, plaintiffs alternatively request that this Court allow plaintiffs to conduct personal jurisdiction discovery. Pursuant to the federal rules, liberal personal jurisdiction discovery is warranted where the plaintiff has established a "colorful or prima facie showing of personal

jurisdiction." *Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014). If the plaintiff has articulated a plausible basis for personal jurisdiction and the factual record is unclear on the issue, "courts will generally grant jurisdictional discovery." *Id.*

Plaintiffs have demonstrated that Airbus is subject to federal personal jurisdiction under the MMTJA since Section 1697 establishes nationwide personal jurisdiction and venue is proper under Section 1391(g). Additionally, Airbus has sufficient national contacts as it sells more aircrafts to the U.S. that any other manufacturer, there are approximately 1,300 Airbus aircrafts operating in the U.S., 13 U.S. air carriers are Airbus customers. (Ex. B), and Airbus admits that it has sold 811 Airbus aircrafts to U.S. customers in the last 10 years (Ex. A to Deft. Brief, Bondergaard Decl. ¶19, Dkt. #43-1). Further, Airbus has pursued litigation in the U.S. Plaintiffs have certainly demonstrated that this Court *could* exercise personal jurisdiction over Airbus. Since plaintiffs have met the low standard, *id.*, and the facts that plaintiffs seek to discover (e.g. Airbus's direct involvement in the U.S. market, revenue Airbus derives from the U.S. market, Airbus's U.S. subsidiaries, lawsuits in which Airbus litigated) would assist the Court should those facts be deemed dispositive, plaintiffs respectfully submit that they are entitled to discovery as an alternative to granting Airbus's motion to dismiss. *In re Testosterone Replacement Therapy Products Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2015 WL 5768574, at *5 (N.D. Ill. Sept. 30, 2015).

## Conclusion

For the foregoing reasons, Plaintiffs respectfully submit that this Court should deny Airbus's motion to dismiss for lack of personal jurisdiction, or alternatively, grant plaintiffs leave to conduct discovery on personal jurisdiction over Airbus.

Dated:  December 4, 2015     Respectfully submitted,


      <u>   /s/Alexandra M. Wisner   </u>
        Attorney For Plaintiffs

        Wisner Law Firm, P.C.
        514 W. State Street
        Suite 200
        Geneva, Illinois  60134
        (630) 262-9434
        (630) 262-1066 (fax)
        aw@wisner-law.com
        Ill. ID No. 6317572

## CERTIFICATE OF SERVICE

Alexandra M. Wisner, an attorney, certifies that she served Plaintiffs' Response To Defendant Airbus, S.A.S.' Motion To Dismiss For Lack Of Personal Jurisdiction upon all counsel of record via CM/ECF on December 4, 2015.


_____ /s/Alexandra M. Wisner _____

## EXHIBITS

EXHIBIT A      Airbus Customers & Operators List

EXHIBIT B      AIRBUS IN THE U.S. – A Major Presence In One of The World's Markets

EXHIBIT C      Airbus A380 receives joint EASA & FAA Type Certification

EXHIBIT D      AIRBUS AMERICAS – Serving Airlines Across The Americas

EXHIBIT E      Affidavit of Alexandra M. Wisner