**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ARIS SISWANTO, *et al.*, | |
| Plaintiffs, | Case No. 15 C 5486 |
| v. | |
| AIRBUS, S.A.S, *et al.*, | Judge John Robert Blakey |
| Defendants. | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This mass casualty action brought under the Multiparty, Multiforum Trial Jurisdiction Act of 2002 ("MMTJA") raises questions concerning this Court's authority to exercise personal jurisdiction over a foreign defendant, the French company Airbus, S.A.S. ("Airbus"), based on events occurring entirely outside the United States. Although this case departs from the norm in that Federal Rule of Civil Procedure 4(k)(1)(C) and the MMTJA enable this Court to consider Airbus' contacts with the United States as a whole and not just the State of Illinois, nothing in the statutes overrides the company's constitutional due process protections governing this Court's exercise of personal jurisdiction. Accordingly, based upon the record presented here, Airbus's motion to dismiss [43] for lack of personal jurisdiction is granted, and no jurisdictional discovery is warranted.

## I. Legal Standard

A motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) tests whether a federal court has personal jurisdiction over

a defendant. When deciding a Rule 12(b)(2) motion without an evidentiary hearing, as here, Plaintiffs must make a *prima facie* showing of personal jurisdiction. *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010).

Plaintiffs bear the burden of establishing that personal jurisdiction exists. *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). To determine whether Plaintiffs have met their burden, this Court may consider affidavits from both parties. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). When Airbus challenges by declaration a fact alleged in the Second Amended Complaint, Plaintiffs have an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Courts must also resolve all factual disputes in Plaintiffs' favor. *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Unrefuted facts in Airbus' affidavits, however, will be taken as true. *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). While in this context affidavits trump the pleadings, in the end, all facts disputed in the affidavits will be resolved in Plaintiffs' favor. *Purdue Research Foundation*, 338 F.3d at 782.

## II.    Facts[1]

This personal injury action arises from the tragic December 28, 2014 crash of Air Asia Flight No. 8501 (an Airbus A320-216, MSN 3648, aircraft) flying from Indonesia to Singapore.  Second Amended Complaint ("SAC"), Count I ¶¶ 3, 5, 7; Bondergaard Decl. ¶ 6.  The aircraft crashed into the Java Sea, killing all those onboard—more than 75 souls.  SAC, Count I ¶¶ 3, 8-9.

Plaintiffs, who are the heirs and personal representatives of deceased passengers, have sued many defendants, including the aircraft manufacturing company Airbus, under the MMTJA.  SAC, Count I ¶¶ 2-3, 5.  As to Airbus, Plaintiffs allege, among other things, that the Airbus A320-216, MSN 3648, aircraft was defective and unreasonably dangerous when it left Airbus' control.  SAC, Count I ¶¶ 6, 9; *see also* SAC, Count III ¶ 7 (alleging that the aircraft was "negligently designed, manufactured, assembled and sold").

There is no dispute that Airbus is incorporated in France and has its principal place of business in Toulouse, France.  SAC, Count I ¶ 2; Bondergaard Decl. ¶ 3.  For at least the past five years, Airbus has not maintained any offices or employees in the United States, or owned or rented any property here.  Bondergaard Decl. ¶¶ 15-17.

All manufacturing work on the Airbus A320-216, MSN 3648, aircraft occurred in Europe.  Bondergaard Decl. ¶ 6.  None of Airbus' subsidiaries in the

---

[1] The following facts are taken from the Second Amended Complaint [32] and the unrefuted November 3, 2015 Declaration of Mads Kjer Bondergaard [43-1].  Bondergaard serves as Airbus' Vice President, Head of Legal Affairs, Litigation & Regulatory.  Bondergaard Decl. ¶ 2.

United States undertook this work.  Bondergaard Decl. ¶ 24.  The Airbus A320-216 aircraft line has been certified by the European Aviation Safety Agency but not the FAA.  Bondergaard Decl. ¶¶ 10-11.  Pursuant to a 2005 purchase agreement, Airbus sold the Airbus A320-216, MSN 3648, aircraft to Air Asia Berhad, a Malaysian airline carrier that does not operate in the United States.  Bondergaard Decl. ¶ 7.  There is no allegation that the Airbus A320-216, MSN 3648, aircraft was ever operated in the United States.  *See* Bondergaard Decl. ¶ 14.

## III.  Analysis

### A.  Personal Jurisdiction

Airbus moves to dismiss, arguing that it lacks minimum contacts with the United States under the Fifth Amendment's Due Process Clause, so this Court cannot exercise general or specific personal jurisdiction over the company.   In response, Plaintiffs proceed only under a theory of general personal jurisdiction arguing that Airbus has extensive contacts with the United States as a whole.  Plaintiffs also argue that there can be no due process concerns in this case because venue is proper in this District.  This Court considers each argument in turn.

#### 1.  Minimum Contacts

Under Federal Rule of Civil Procedure 4(k)(1)(C), personal jurisdiction is proper if authorized by a federal statute.  Specifically, Rule 4(k)(1)(C) states that serving a summons "establishes personal jurisdiction over a defendant … when authorized by a statute."  The MMTJA is one such statute.  When the MMTJA's

criteria for bringing a mass casualty claim are met, *see* 28 U.S.C. § 1369, service of process is proper nationwide (indeed, worldwide if permitted by law):

> When the jurisdiction of the district court is based in whole or in part upon section 1369 of this title, process, other than subpoenas, may be served at any place within the United States, or anywhere outside the United States if otherwise permitted by law.

28 U.S.C. § 1697. Other Courts in this District have reached the same conclusion. *E.g.*, *Stenger v. World Harvest Church, Inc.*, No. 02-8036, 2003 WL 22048047, at *3 (N.D. Ill. Aug. 29, 2003) (interpreting § 1697 as providing nationwide service); *Stenger v. Leadenhall Bank & Trust Co. Ltd.*, No. 02-8655, 2004 WL 609795, at *8 (N.D. Ill. March 23, 2004) (citing *World Harvest Church* for the same proposition).

Despite the geographic expansion of service and, in turn, the initial scope of personal jurisdiction, Rule 4(k)(1)(C) and Section 1697 do not override the controlling constitutional limitations on this Court's exercise of general or specific personal jurisdiction imposed by the Fifth Amendment's Due Process Clause. *KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718, 723, 730-31 (7th Cir. 2013); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671-72 (7th Cir. 1987). Under the very Seventh Circuit law that Plaintiffs cite (but contrary to their own argument), the traditional "minimum contacts" test from *International Shoe* still governs even when the basis of personal jurisdiction involves a statute providing for nationwide service of process. *KM Enterprises*, 725 F.3d at 723, 730-31; *Lisak*, 834 F.2d at 671. The relevant minimum contacts in these instances simply lie with the United States as a whole and not just the forum state (here, Illinois). *KM Enterprises*, 725 F.3d at 730-31; *Lisak*, 834 F.2d at 671; *Zurich Capital Markets,*

*Inc. v. Coglianese*, 388 F. Supp. 2d 847, 857 (N.D. Ill. 2004); *see also Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626-27 (4th Cir. 1997). In this way, when a federal statute authorizes nationwide service of process, the scope of the minimum contacts test exceeds the forum state's long-arm statute.

In *KM Enterprises*, for example, the Seventh Circuit applied the traditional minimum contacts test when personal jurisdiction was based on the Clayton Act, which authorizes nationwide service of process. 725 F.3d at 723, 730-31 (citing 15 U.S.C. § 22). Likewise, in *Zurich Capital Markets*, the Court applied the minimum contacts test when personal jurisdiction was based on a securities statute authorizing nationwide service. 388 F. Supp. 2d at 857-58 (citing 15 U.S.C. § 78aa).

When the defendants are domiciled in the United States, such as in *KM Enterprises*, 725 F.3d at 721-22, 730-31, *Fitzsimmons v. Barton*, 589 F.2d 330, 333-34 (7th Cir. 1979), and many other cases Plaintiffs cite, the due process analysis under a nationwide service of process statute is straightforward. Domestic companies and individuals, almost by definition, have minimum contacts with the United States, so there may be general personal jurisdiction in any federal court throughout the country. *See Fitzsimmons*, 589 F.2d at 333-34 & n.4.

But Airbus is not a domestic company, so Plaintiffs must show that its contacts with the United States are sufficient to support either general or specific personal jurisdiction. Ostensibly, and with good reason, Plaintiffs in this case proceed only under a theory of general personal jurisdiction. Under the Due

Process Clauses of both the Fifth and Fourteenth Amendments, general personal jurisdiction requires "continuous and systematic general business contacts" such that Airbus is "essentially at home in the forum," here, the United States as a whole and not just the State of Illinois. *Abelesz v. OTP Bank*, 692 F.3d 638, 654, 656 (7th Cir. 2012) (internal quotations omitted); *see also Zurich Capital Markets*, 388 F. Supp. 2d at 857. As noted by the Seventh Circuit in *Abelesz*, 692 F.3d at 656, this Court's inquiry is *not* whether Airbus' contacts with the forum are simply "extensive in the aggregate."

A corporation is "essentially at home" both where it is incorporated and where its principal place of business is located. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853-54 (2011). Beyond these easy cases, the "best example" of the "essentially at home" test is when a company informally relocates its headquarters to the United States from abroad. *Abelesz*, 692 F.3d at 654-55 (discussing the outcome reached in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952)). The standard for general personal jurisdiction is demanding because the consequences are "severe": the foreign defendant may be called into court to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum. *uBID*, 623 F.3d at 426.

Against such demanding requirements for general personal jurisdiction, Plaintiffs argue that four categories of contacts between Airbus and the United States warrant this Court's exercise of general personal jurisdiction. This Court disagrees, finding that these contacts neither separately nor collectively establish

the requisite basis to exercise general personal jurisdiction. The contacts may show that Airbus has extensive contacts with the United States in the aggregate, but they do not establish that the company is "essentially at home" here. *See Abelesz*, 692 F.3d at 654, 656.

First, Plaintiffs point to Airbus' aircraft sales in the United States. Airbus declared that it sold 12,0259 aircrafts in the past 10 years. Bondergaard Decl. ¶ 19. Of those sales, just 811 aircrafts—or 6.73 percent—were to United States-based customers. Bondergaard Decl. ¶ 19. Consistent with this testimony, Airbus lists domestic airlines as customers on its online "Customer & Operations List," and elsewhere on its webpage.

These sales, none of which gave rise to the underlying crash, *see* Bondergaard Decl. ¶ 19, do not establish general personal jurisdiction. The Supreme Court has instructed that imputing general personal jurisdiction from a defendant's sales in the forum, even if sizable, would stretch general personal jurisdiction beyond its reach. *Daimler*, 134 S.Ct. at 760-62. For example, the German corporate defendant in *Daimler* was not subject to general personal jurisdiction in the forum state (California) under analogous circumstances. It was the largest supplier of luxury cars in California, which amounted to 2.4 percent of the company's global sales; and also had multiple facilities in the state through its subsidiary. *Id.* at 752, 761-62. Likewise, the Seventh Circuit also has declined to exercise general personal jurisdiction under more compelling circumstances than here. In *uBID*, 623 F.3d at 424-26, the defendant had hundreds of thousands of customers in the forum state,

resulting in "many millions of dollars" in revenue, but that was not enough in *uBID* to establish jurisdiction; neither are the contacts here.

Second, Plaintiffs argue that Airbus spends 42 percent of its aircraft-related procurement in the United States. Mere purchases though, "even if occurring at regular intervals," do not establish general personal jurisdiction when the underlying cause of action is not related to those purchases. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 407, 418 (1984); *accord Daimler*, 134 S.Ct. at 757. Similar to here, *Helicopteros Nacionales* was a wrongful death action arising from a tragic helicopter crash that occurred abroad. 466 U.S. at 409-13. The Colombian corporate defendant owned the helicopter. *Id.* at 409-10. Applying the above legal principle, the Supreme Court found general personal jurisdiction lacking in the forum state (Texas) even though the defendant, among other contacts, had purchased approximately 80 percent of its helicopter fleet, plus spare parts and accessories, from a vendor in Texas. *Id.* at 411, 416, 418. Airbus' procurement purchases (42 percent of its purchases) lag far behind the foreign defendant in *Helicopteros Nacionales* (80 percent).

Third, Plaintiffs attempt unsuccessfully to impute the contacts from Airbus' "separately incorporated" subsidiaries. Bondergaard Decl. ¶ 23. Plaintiffs argue that the subsidiaries maintain a physical presence in the United States and support thousands of jobs here. The general rule, however, is that the jurisdiction contacts of a subsidiary are not imputed to the parent. *Abelesz*, 692 F.3d at 658-59 (internal quotations omitted). While there are certain exceptions when the parent company

9

exercises an "unusually high degree of control" over the subsidiary, or the subsidiary's "corporate existence is simply a formality," such is not the case here. *Abelesz*, 692 F.3d at 658-59 (internal quotations omitted); *see also Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944-45 (7th Cir. 2000).  Indeed, there is no suggestion in the record that Airbus exercises an unusually high degree of control over its subsidiaries or that their corporate existence is simply a formality.  As such, Plaintiffs offer no factual basis for piercing the separate corporate identities in this case.[2]

Fourth, Plaintiffs cite a 2006 Associated Press article showing that the FAA certified another aircraft model, the Airbus A380.  This isolated fact has no special significance as far as personal jurisdiction is concerned.  Perhaps FAA certification might have supported specific personal jurisdiction had an Airbus A380 model aircraft crashed into the Java Sea, but that did not happen. Bondergaard Decl. ¶ 11.

Lacking the requisite contacts for this Court to exercise general personal jurisdiction over Airbus, Plaintiffs also warn that dismissing Airbus would set a dangerous precedent, because it would effectively exempt Airbus from the MMTJA. This warning, however, is unavailing.  To begin, there is nothing novel in Plaintiffs' warning.  This Court has limited jurisdiction and, anytime it grants a Rule 12(b)(2) motion, the defendant is placed beyond this Court's reach.  Plaintiffs, of course, do

---

[2] To be sure, Plaintiffs are correct that the Supreme Court in *Daimler* considered the subsidiary's contacts with the forum, but that was for purposes of argument only.  134 S.Ct. at 758-60 (criticizing the Ninth Circuit's broad standard for imputing a subsidiary's forum contacts onto its parent company), 760 (beginning the Court's analysis section with: "Even if we were … further to assume MBUSA's [subsidiary] contacts are imputable to Daimler [parent company]").  The Court expressly rejected general personal jurisdiction in either event.  *Id.* at 760-62.

not desire this outcome, but this Court has no power to override constitutional due process protections. Not even the Seventh Circuit could relax due process in *Abelesz*, 692 F.3d at 644-46, 659, when it found general personal jurisdiction in the United States lacking over the defendant Hungarian banks that purportedly expropriated money from Jewish victims and financed part of the Holocaust.

Furthermore, nothing this Court has decided today prevents Plaintiffs from bringing suit in a proper forum, or prevents a future court from exercising specific personal jurisdiction in the proper case. Indeed, Airbus' election to bring a preemptive declaratory judgment action in the Western District of Washington (about the validity of a United States patent) demonstrates that there will be specific personal jurisdiction in the right case. *See Airbus S.A.S. v. Aviation Partners, Inc.*, No. 12-1228 (W.D. Wash.). This matter might have been such a case had the crash occurred in the United States; had Airbus designed, manufactured or sold the aircraft in the United States; had the FAA certified the aircraft; or had some combination of the above occurred. But those are not the facts here. SAC, Count I ¶ 9; Bondergaard Decl. ¶¶ 5-7, 11, 19-20, 24. And the Supreme Court has instructed that international comity cuts against this Court expanding general personal jurisdiction over foreign defendants, such as to fill-in perceived gaps in the scope of specific personal jurisdiction. *Daimler*, 134 S.Ct. at 762-63.

For all of these reasons, this Court has no power to exercise personal jurisdiction over Airbus. Although Airbus' contacts with the United States may have been extensive, Plaintiffs have fallen far short of showing the *de facto*

11

relocation that the Supreme Court has required for a foreign corporate defendant to satisfy general personal jurisdiction. *Abelesz*, 692 F.3d at 654-56.

### 2. Venue

In the alternative, Plaintiffs argue, based on a misreading of the law, that the Fifth Amendment's Due Process Clause is automatically satisfied because venue is proper in this District. Plaintiffs argue that, when personal jurisdiction is based on a statute authorizing nationwide service, as here, the constitutionality of personal jurisdiction is "rooted" in whether venue is proper. There, of course, is no dispute at this stage that the MMTJA's venue requirements are satisfied in the Northern District of Illinois because at least one other defendant resides here: Motorola, Inc. *See* 28 U.S.C. § 1391(g) (stating the venue requirements). This fact, however, does not change the ultimate result here.

First, the distinction between venue and personal jurisdiction has "long been recognized," so establishing venue in this District does not, by itself, establish personal jurisdiction. *Action Embroidery*, 368 F.3d at 1178-79. Personal jurisdiction is the power to adjudicate, whereas venue is the place where judicial authority may be exercised for the convenience of the parties. *Id.* at 1178-79. For these reasons, Courts, including the Seventh Circuit, evaluate personal jurisdiction and venue independently, even when applying federal statutes authorizing nationwide service of process. *Id.* at 1179 (surveying cases from the Second, Fourth and Seventh Circuits). In the Seventh Circuit case, *Lisak*, 834 F.2d at 671-72, for example, the Court found that there was personal jurisdiction over the defendant,

12

but, in remanding the case, registered its doubts about whether venue was appropriate in the forum state. *See Action Embroidery*, 368 F.3d at 1179.

Applying these settled principles, the Ninth Circuit rejected the very argument Plaintiffs raise here, concluding that the existence of personal jurisdiction under a nationwide service of process statute did not depend on venue alone. *Action Embroidery*, 368 F.3d at 1178-80. Nothing in the MMTJA requires different treatment from the statute in *Action Embroidery*, and far from challenging *Action Embroidery* and its embedded cases, Plaintiffs rely on such cases in their response.

Also in response, Plaintiffs cite two more cases, *KM Enterprises* and *Industrial Models*, but neither addressed whether venue alone establishes personal jurisdiction under nationwide service of process statutes. Both cases instead found that, under the Clayton Act, which permits nationwide service, the plaintiffs have to satisfy its venue requirements and not the more expansive venue rules in 28 U.S.C. § 1391. *KM Enterprises*, 725 F.3d at 721-22, 731-32; *Industrial Models, Inc. v. SNF, Inc.*, No. 14-8340, 2015 WL 2399089, at *3 (N.D. Ill. May 18, 2015). *KM Enterprises* and *Industrial Models*, in fact, help Airbus. They analyzed personal jurisdiction and venue separately, reinforcing the Ninth Circuit's conclusion in *Action Embroidery*.

Plaintiffs also read too much into the Fourth Circuit's guidance that defendants "must look primarily to federal venue requirements for protection from onerous litigation" when personal jurisdiction is based on a nationwide service of process statute. *Hogue v. Milodon Engineering, Inc.*, 736 F.2d 989, 991 (4th Cir.

1984).  This guidance is apt when, as in *Hogue* (as well as *KM Enterprises* and *Industrial Models*), the defendant is a domestic company that cannot avoid having minimum contacts with the United States as a whole.  The defendant then is better off challenging venue rather than personal jurisdiction to avoid litigating in a particular forum.  But the quoted snippet from *Hogue* loses value when there is a foreign defendant that, like Airbus, can avoid having minimum contacts with the United States altogether.

Quite simply, the law provides no basis for this Court to conflate an analysis of personal jurisdiction with an examination of venue.

### B.    Jurisdictional Discovery

As a final matter, Plaintiffs ask this Court to allow jurisdictional discovery before dismissing Airbus.  Plaintiffs must make a *prima facie* showing of personal jurisdiction before such discovery should be permitted.  *Central States*, 230 F.3d at 946.  Foreign nationals, like Airbus, "usually" should not be subject to extensive discovery to determine whether personal jurisdiction exists over them.  *Id.*

Under more compelling facts than here, the Seventh Circuit in *Central States* affirmed the district court's denial of jurisdictional discovery.  *Id.* at 937, 946-47.  The plaintiffs in that case, as here, argued that the Canadian defendants should be forced to defend in this District based upon the forum contacts of their subsidiary.  *Id.* at 937-38, 947.  But their evidence, such as a fax cover legend suggesting that the parent company and its subsidiary, REE and ICTL, respectively, were really one entity ("REE/ICTL"), only confirmed an affiliation between the two—not that the

14

defendants had exercised an unusually high degree of control over the subsidiary or that corporate formalities had been ignored. *Id.* at 938, 945, 947. In *Central States*, the plaintiffs' proffered discovery requests also were too broad, given that "burdensome, wide-ranging discovery against defendants from a foreign nation is not appropriate at a stage when the district court is trying to determine whether it has any power over [them]." *Id.* at 947.

As in *Central States*, the record presented here does not warrant jurisdictional discovery. Plaintiffs failed to make a *prima facie* showing of personal jurisdiction, let alone proffer what limited discovery requests they would issue. Even had Plaintiffs made that proffer, the general categories of evidence Plaintiffs wish to discover, such as "Airbus's direct involvement in the U.S. market, revenue Airbus derives from the U.S. market, [and] Airbus's U.S. subsidiaries," have already been raised and rejected, and they are not grounds for exercising general personal jurisdiction under Supreme Court and Seventh Circuit precedent. In short, Plaintiffs have not cleared the high hurdle required for justifying jurisdictional discovery.

## IV.    Conclusion

Airbus' motion to dismiss [43] is granted, and Plaintiffs' claims against Airbus are dismissed without prejudice.  The Clerk is directed to terminate Airbus, S.A.S. as a defendant.

Dated: December 30, 2015

Entered:

United States District Judge

16