

Menara Prima, 18th Floor
Jl. DR. Ide Anak Agung Gde Agung Blok 6.2
Kawasan Mega Kuningan
Jakarta Selatan 12950 - Indonesia
Tel : (62-21) 5794-7880
Fax. (62-21) 5794-7881
E-mail : general@baharandpartners.com
www.baharandpartners.com

# DECLARATION OF WAHYUNI BAHAR SUPPORTING HONEYWELL INTERNATIONAL, GOODRICH AND DORIC'S MOTION TO DISMISS ON THE BASIS OF *FORUM NON CONVENIENS*

I, Wahyuni Bahar, hereby state the following:

## I. INTRODUCTION

1. I am an attorney and hold a license to practice law in all jurisdictions in Indonesia. I started practicing law in 1989. I am the founder of Bahar & Partners with offices in the Menara Prima building, 18th Floor, Jl. DR. Ide Agung Anak Gde Agung, Blok 6.2, Jakarta 12950, Indonesia.

2. I graduated and obtained my Bachelor of Law (*Sarjana Hukum*) degree from Faculty of Law, Padjadjaran University, Indonesia in 1986. Then I obtained my Master of Law degree from the Institute of Air and Space Law, McGill University, Montreal, Canada in 1992. I have also completed a Postgraduate Diploma program in Law at the Institute of Social Studies, The Hague, the Netherlands in 1989. I also studied Mathematics at Bandung Institute of Technology (ITB), Indonesia.

3. Before founding Bahar & Partners, I was a lecturer at Padjadjaran University, Bandung and Trisakti University, Jakarta, Indonesia. I lectured on various topics, including air and space law, telecommunications law, and international law.

4. I am one of the founders, acted as the first chairman (2010 - 2014), and I am now sitting as head of the Advisory Board of the Indonesian Air Law Society (IALS). I am also a member of the Worldwide Airport Lawyer Association (WALA).

5. In carrying out my legal profession, I am registered as a member in many professional organizations, among them the Indonesian Advocate Association (PERADI), Capital Market Lawyers Association of Indonesia (HKHPM), and sitting as the Head of Multilateral and Foreign Institutions of the National Executive Board of the Indonesian Employers Association (APINDO).

1449307.1

**BAHAR & PARTNERS**
ATTORNEYS AT LAW

6. Having more than 25 years of experience practicing law in Indonesia, I have handled, been involved with and actively participated in many legal disputes and transactions in Indonesia and various other jurisdictions.

7. I often speak at various seminars on foreign capital investment, financing, air and space law, infrastructure, capital market and various other Indonesian legal topics.

8. I have published numerous articles related to the Indonesian legal system and aviation law., including:

    a. Corporate Governance Review (Fifth Edition) 2015
       Title: Corporate Governance Review 2015
       Publisher: Getting The Deal Through – Law Business Research Limited

    b. Indonesia Corporate Governance 2015
       Title: Corporate Governance 2015
       Publisher: Getting The Deal Through – Law Business Research Limited

    c. Indonesia Aviation Finance & Leasing 2015
       Title: Aviation Finance & Leasing 2015
       Publisher: Getting The Deal Through – Law Business Research Limited

    d. Indonesia Air Transport 2015
       Title: Air Transport 2015
       Publisher: Getting The Deal Through – Law Business Research Limited

    e. Indonesia Air Transport 2014
       Title: Air Transport 2014
       Publisher: Getting The Deal Through – Law Business Research Limited

    f. Corporate Governance Review (Fourth Edition) 2014
       Title: Corporate Governance Review 2014
       Publisher: Getting The Deal Through – Law Business Research Limited

    g. Indonesia Corporate Governance 2014
       Title: The Corporate Governance 2014
       Publisher: Getting The Deal Through – Law Business Research Limited

1449307.1



BAHAR & PARTNERS
ATTORNEYS AT LAW

    h.    Competition in Telecommunication Business
           Title: Competition in Telecommunication Business
           Publisher: Bahar and Partners

    i.    Investing in Indonesia's Infrastructure – An Investor's Guide 2012
           Title: Investing in Indonesia's Infrastructure: An Investor's Guide
           Publisher: Bahar and Partners

    j.    Foreign Direct Investment in Indonesia - An Update
           Title: Foreign Direct Investment in Indonesia: An Update
           Publisher: Bahar and Partners

9. I have reviewed the operative Third Amended Complaint in the litigation styled ARIS Siswanto, Personal Representative of the Heirs of MRS. SUSIYAH, deceased, et al., v. AIRBUS S.A.S., a corporation, et al., No. 15-cv-5486 ("**Subject Litigation**") as well as other documentation provided to me by Honeywell's counsel. I understand that, on December 28, 2014, Air Asia operated an Airbus 320-200 aircraft (the "**Aircraft**") as Flight Number 8501, which was traveling from Surabaya, Indonesia to Singapore. During the flight, the Aircraft crashed into the Java Sea, resulting in the deaths of all 162 persons onboard (the "**Accident**"). None of the decedents were citizens of the United States.

10. Personal representatives for some of the deceased (the "**Plaintiffs**") have now brought the current lawsuit in the United States District Court for the Northern District of Illinois, Eastern Division (the "**Northern District of Illinois**"). The Plaintiffs are pursuing strict liability, negligence and failure to warn causes of action against the Aircraft's manufacturer as well as alleged manufacturers of certain component parts contained within the Aircraft and the alleged lessor (collectively, the "**Defendants**"). Specifically, the Plaintiffs allege that the Accident occurred due to various defects in the Aircraft's design, as well as defects in certain Aircraft component parts, and that the Defendants failed to warn of those defects.

11. I make this Declaration in support of defendants Honeywell International, Goodrich Corporation and Doric Corporation ("**Moving Defendants**")'s Motion to Dismiss on the basis of *forum non conveniens*. In making this Declaration, I have read, studied, analyzed, and investigated the laws and regulations of the Republic of Indonesia ("**Indonesia**") that relate to my opinions. Further, in addition to analyzing the Third Amended Complaint, I have also reviewed the final Aircraft Accident Investigation Report No. KNKT.14.12.29.04 (KNKT Report) produced by the *Komite Nasional Keselamatan*

1449307.1



**BAHAR & PARTNERS**
ATTORNEYS AT LAW

*Transportasi* (Indonesia's National Committee for Transportation Safety). I have also studied the order in the Adam Air case where the United States District Court for the Northern District of Illinois, Eastern Division, dismissed the Plaintiffs' claims based on the doctrine of *forum non conveniens* and found Indonesia to be an available and adequate forum. *In re Air Crash over Makassar Straigtht, Sulawesi*, No. 09-cv-3805, 2011 U.S. Dist. LEXIS 2647, at *18 (N.D. Ill. Jan. 11, 2011). The Adam Air case involved decedents in an aviation incident that occurred in Indonesia and has been cited approvingly in subsequent cases. *Lumenta v. Bell Helicopter Textron, Inc.*, No. 01-14-00207-CV, 2015 Tex. App. LEXIS 906, at ** 22-24 (Tex. Ct. App. Aug. 7, 2015).

12. Moving Defendants' attorneys in the United States have requested my opinion regarding matters related to Indonesian Courts and court procedures, as well as applicable Indonesian law with regard to wrongful death or unlawful acts. Therefore, unless expressly stated otherwise, this Declaration is made on the basis of my personal knowledge, experience and expertise as an attorney who regularly represents clients in Indonesia and the research that I have conducted.

13. Based on my experience as an Indonesian attorney, lecturer, and observer of legal issues in Indonesia, including with respect to Indonesia's court system, I am of the opinion that the courts of Indonesia ("**Indonesian Courts**") provide an adequate and available forum for litigation related to the Accident. I am also of the opinion that, should the Plaintiffs proceed to file their lawsuits against any of the Moving Defendants in Indonesia, the Indonesian Courts are competent to justly and efficiently determine the merits of the Plaintiffs' claims pursuant to the laws of Indonesia. Indonesia law is such that, if the Plaintiffs can meet their burden of proof and establish that the Moving Defendants have committed an unlawful act under Indonesian law in connection with the Accident, Indonesian Courts will award the Plaintiffs damages consistent with the laws of Indonesia.

In support of my opinion, I further state:

1449307.1



## II. INDONESIAN LEGAL SYSTEM

14. The 1945 Constitution of Indonesia ("the **Constitution**") governs the Indonesian judicial system. Article 24, Paragraph (1) of the Constitution provides that judicial power shall be free for conducting a judicature to enforce Indonesian law and justice. Further, Article 1, Paragraph (3) of the Constitution provides that Indonesia is a state based on law. As a result, Indonesia is a constitutional state that seeks to guarantee an independent judiciary that is free from influence from the other branches of the Indonesian government.

15. Indonesia, as a former Dutch colony, has adopted a civil law system similar to that of many European countries. Although civil law systems such as Indonesia's do not recognize the concept of binding legal precedent, as is practiced by courts in the United States, Indonesia's Supreme Court (Indonesia's highest court) selects its decisions to be published, which then develop into "*jurisprudence.*" The jurisprudence may be treated as legal basis and binding legal precedent if the prevailing laws do not clearly stipulate provision of a particular case. Although jurisprudence is not binding, it has great value and may be considered and followed by the judges in similar cases. This concept of "*jurisprudence*" is intended to assist the law in continuing to develop, and to reflect changes and developments that occur in Indonesia.

16. In Indonesia, judges are obliged to accept any case, and shall not refuse to examine any case on the ground that the law does not exist or is not clear, because judges shall be considered to understand the law (*ius curia novit*).[1]

17. Currently, Indonesia has 2 state institutions which supervise court proceedings and the conduct of judges, namely the Supreme Court and Judicial Commission. Based on Article 39 and Article 40 of Law 48/2009, the Supreme Court is a state institution which conducts internal supervision and the Judicial Commission conducts the external supervision.

18. Further, Article 2 Paragraph (4) of Law 48/2009 provides:

> "*A judicature shall be performed by the principles of simple, quick and low cost.*"

---

[1] Article 22 of the *Algemene Bepalingen van Wetgevingvoor Indonesia* ("**AB**")-Stb. 1847-23 (the General Provisions of Law for Indonesia),

5



19. Article 4 Paragraph (2) of Law 48/2009 provides:

    *"The court shall assist the justice pursuer and strive to overcome all obstacles and barriers in order to achieve the implementation of simple quick and low cost proceedings."*

    Consequently, the Indonesian judicial system is designed to promote the simple and efficient administration of justice at a low cost to litigants, and that principle will apply if the Plaintiffs were to proceed with their claims against any of the Moving Defendants in Indonesia.

20. Pursuant to Article 13 Paragraph (1) of Law 48/2009, all court hearings shall be open to the public, unless the prevailing laws stipulate otherwise. Moreover, Articles 13 paragraph (2) and (3) of Law No. 48/2009 provide, respectively, that verdicts are valid and have legal force only if they are pronounced in open court and the non-compliance of which should cause the verdict to be null and void.

21. According to the Supreme Court Circulation Letter No. 2 of 2014 on The Case Settlement in The First Court and High Court in 4 (four) Courts, the examination of a case in the district court must be concluded within 5 (five) months, meanwhile in the high court it must be concluded in 3 (three) months, which does not include the mediation period as will be further explained in point IV.B below. In the event that these deadlines are not met, the district court or high court judges should report this to the Supreme Court. In addition, the Supreme Court also issued the Supreme Court Circulation Letter No. 6 of 2014 which stipulates the detailed procedure of the summon or notification for parties domiciled outside the territory of the selected district court in order to perform the principle of a judicature which is simple, quick and low cost.

22. The Indonesian court system is made up of approximately 347 District Courts, which are the courts of first instance. Indonesia has 30 High Courts, to which decisions issued by District Courts may be appealed (Article 26 of Law 48/2009). Indonesia has one Supreme Court and cassation appeals may be filed to the Supreme Court from decisions of the High Court (Article 23 of Law 48/2009). In addition, Article 24 of Law 48/2009 permits case review of verdicts issued by the Supreme Court for limited reasons.[2] Lawsuits alleging unlawful acts are heard by a panel of three judges.

---

[2] Some of the reasons are:
(i) if the judgment is founded upon deceit of the opposing party which becomes known following the judgment of the district court or if evidence is determined by a criminal court to be fraudulent;
(ii) if new and decisive evidence is found after the case has been adjudicated;
(iii) if the court grants a judgment exceeding the extent of the claim;
(iv) if one part of the claim has not yet been decided for no reason;

1449307.1



23. Indonesian law does not strictly stipulate which relevant District Court in Indonesia may be appropriate to adjudicate a case. This means the parties may agree to bring the case to any district courts in Indonesia. However, in practice, many cases involving defendants who are domiciled outside Indonesia are registered in the Central Jakarta District Court. This is due to the summon process to defendant being conducted through the Protocol Directorate General of Ministry of Foreign Affairs, which is located in the Central Jakarta District Court. Thus, for the efficiency of the summon practice, a lot of cases are adjudicated in the Central Jakarta District Court. It is also worth noting that the Central Jakarta District Court is classified as the first level of District Court in Indonesia.[3]

### III. ATTORNEYS

24. The profession of attorney is governed under Law No. 18/2003 on Attorneys ("**Attorneys Law**"). An attorney is any person whose profession is to provide legal services in and out of court. One may be appointed as Attorney if he or she graduates with a higher education degree in law and who has passed special education courses for the profession of Attorney offered by any Attorney Organization.

25. Pursuant to Article 1.7 of Attorneys Law, attorneys are entitled to receive an Honorarium for legal services provided to the client. The amount and type of Honorarium will be determined properly based upon agreement of both parties. Indonesian attorneys may accept several types of fee arrangements, including "contingency fee" arrangements. Furthermore, if a plaintiff cannot afford the services of an attorney, free services can be obtained from legal aid agencies, which provide such services at no cost.

26. In my opinion, if plaintiffs in this case were to re-file their suit in Indonesia, they will not have any problem finding and retaining a capable Indonesian attorney.

### III. INDONESIAN COURTS' JURISDICTION OVER DEFENDANTS

27. If the lawsuit currently pending before the Northern District of Illinois is re-filed in Indonesia, the general judicial court will have authority to adjudicate this matter. The Plaintiffs will file their lawsuit in the District Court as the court of first instance because the Plaintiffs allege an unlawful act.

---

(v) if the same court or a court at the same level has granted a judgment which is contrary to the judgment in question, provided that the case involves the same parties, the same matters and the same grounds; or
(vi) if in a judgment, there exists negligence or manifest error.
[3] http://litbangdiklatkumdil.net/direktori-pengadilan/4-peradilan-umum/14-peradilan-umum-jakarta.html, accessed on 11 January 2016, 15:52 pm.

1449307.1

**BAHAR & PARTNERS**
ATTORNEYS AT LAW

28. Except for disputes that involve issues that are outside of the District Court's authority (such as, for example, the issuance of State administrative decisions, which is within the jurisdiction of the state administrative courts), District Courts are not allowed to voluntarily raise an objection with respect to their jurisdiction to hear a case. In other words, litigation involving unlawful acts is within the authority of the District Court to entertain and Indonesian courts are not allowed to question their jurisdiction unless a defendant raises an objection.

29. As a result, it is widely accepted by Indonesian Courts that an Indonesian party is allowed to submit a civil claim against a foreign party in an Indonesian court. Indeed, Article 100 of the *Reglement op de Burgerlikje Reschtsvordering* ("**Rv**"), on which Indonesian courts rely, provides:

> *"a foreign party, who is a non-resident, or even does not hold any actual dwelling place in Indonesia, may be claimed before Indonesian court in relation to his obligations that must be performed in Indonesia or anywhere else to an Indonesian."*

30. I have been advised that all Moving Defendants in the Subject Litigation will agree to accept the jurisdiction of the Indonesian Courts if the case is re-filed in Indonesia after the court in the Northern District of Illinois dismisses the lawsuit on the basis of *forum non conveniens*. To voluntarily submit to the Indonesian court, Moving Defendants agree that they will not submit a demurral or objection to the Court's jurisdiction.

31. In addition, Article 1967 of the Indonesian Civil Code ("**Civil Code**") states:

> *"All legal claims, either business or individual, will expire after 30 years, an individual who invokes the limitation period is not required to provide any document of entitlement, and invoking a limitation period cannot be challenged on the grounds of good faith."*

32. Thus, the 30-year limitation period applies to litigation arising out of an unlawful act, which as I noted, constitutes the type of lawsuit that the Plaintiffs may bring against Moving Defendants in Indonesia.

33. I have been advised by Honeywell's counsel that Moving Defendants will stipulate to waiving any statute of limitations defense in Indonesia for a period of one (1) year following the date that the Northern District of Illinois court enters its dismissal order. Subject to the Judges' discretion, Indonesian Courts would recognize and enforce such a stipulation.

1449307.1



## IV. INDONESIAN COURT PROCEDURE

### A. INITIAL PLEADINGS

34. Article 141, Paragraph (2) of the Indonesian Procedural Law ("**HIR**") provides that a civil action is commenced when a plaintiff submits a memorandum of claim. The registration fee for bringing a lawsuit in the District Court depends on the number of defendants to be summoned. For example, for a case with one defendant in the Central Jakarta District Court, the registration fee for the complaint is Rp 922,000 (nine hundred twenty two thousand Rupiah) (approximately $68.39USD at current conversion rates, as of 25 February 2016). Each additional party shall be charged Rp 300,000 (three hundred thousand Rupiah) (approximately $22.26USD at current conversion rates, as of 25 February 2016). Thus, the fee to bring a lawsuit in Indonesia is affordable.

### B. MANDATORY MEDIATION AND SETTLEMENT

35. After a plaintiff has appointed legal counsel and registered a memorandum of claim, the competent District Court will summon the parties to be present at the first hearing. Pursuant to Article 130 of HIR, the panel of judges appointed by the Head of the District Court will call upon the parties to reach an amicable settlement and enter into mediation. (Supreme Court Regulation No. 1 of 2016 on Mediation Procedures in Court ("**SC Regulation 1/2016**")). The parties may choose their own mediator(s) or have the panel of judges on the District Court appoint a mediator from a registeredlist in the district court. The mediation process shall last for the maximum of thirty (30) working days since the issuance of order letter for conducting mediation from the panel of judges, and if both parties agree, the limitation can be extended to another thirty (30) working days since the date of the end of the 30-day aforementioned period. If the parties reach an amicable agreement, the panel of judges shall embody that agreement in a decision, which shall have permanent force and may not be appealed (Article 130, Paragraph (3) of HIR).

36. Thus, court-initiated mediation in Indonesia is mandatory. If the mediation is unsuccessful, the case will proceed and the defendant will be afforded the opportunity to present a reply (rebuttal) to the plaintiff's lawsuit (Article 121, Paragraph (2) of HIR). The plaintiff is given the opportunity to present a counterplea and the defendant may respond with a rejoinder (Article 115 of Rv).

37. It is worth noting that, based on Article 36 *jo* Article 27 paragraph (2) of SC Regulation 1/2016, the disputed parties with the assistance of a certified mediator may settle a dispute outside the court or by themselves during the trial process as long as the decision



has not become legally binding. If a settlement is reached, they may submit the settlement agreement to the court to obtain a settlement deed. The judges will confirm the settlement agreement if such settlement agreement fulfills the following requirements: (i) does not contravene the laws; (ii) does not harm any third party; and (iii) executable. The settlement deed agreement cannot be appealed.

### C. EVIDENTIARY PROCEEDINGS

38. Thereafter, the proceedings move to the evidentiary stage, where the parties present their evidence. Article 164 of HIR allows parties in legal proceedings to present several types of evidence, including:

    - Written evidence;
    - Evidence of Witnesses;
    - Presumptions;
    - Confessions; and
    - Oaths.

39. In addition, Article 154, Paragraph (1) of HIR allows the panel of judges and/or parties to submit expert witnesses to provide proof to the panel of judges on technically complex subjects. The use of expert witnesses is common in Indonesia in legal disputes that involve technical and complex issues.

40. Pursuant to Article 169 of HIR, evidence from a witness may not be considered unless it is supported by other evidence or confession or oath. Further, based on Article 154 paragraph (1) of HIR, the following are the categories for a person prohibited to be a witness:

(i) the biological family and family related by marriage on the lineage; and
(ii) the wife or husband; even though they have been divorced

Basically, a testimonial from a witness shall be based on events seen, heard and experienced by the witness itself.

In relation to this case, and based on the documentation that I have reviewed, many potential witnesses such as PT Air Asia Indonesia (as operator of the accident aircraft) personnel, Air Traffic Control (ATC) personnel, airport operations personnel and many others are domiciled in Indonesia. Therefore, as to these necessary witnesses, a trial will allow for their testimony.

1449307.1



41. Indonesia courts follow the inquisitorial system, and judges play an active role in hearing a case. The panel of judges both in the District Court and High Court may directly pose questions to witnesses. In addition, witnesses, including both fact and expert witnesses, may be examined by opposing counsel.

### D. SUMMATION AND DECISION

42. After the evidentiary stage, the panel of judges affords the parties an opportunity to submit a written summation which consists of a summary of the evidence and the legal arguments to support their case (Article 28 of Rv).

43. Following summation arguments, the District Court panel of judges will issue its decision (Article 178 of HIR). The decision is based on the panel's confidential deliberations. Each panel judge is required to give his or her judgment and opinion in writing. If the panel cannot reach a consensus, a decision agreed upon by two judges shall be the final decision, and the dissenting judge's opinion must be written into the court's decision. After the deliberation proceeding, the panel of judges will hold a final hearing to read the court's decision.

### E. APPEALS

44. As indicated above, pursuant to Article 26, Paragraph (1) of Law 48/2009, the losing party at the District Court may appeal to the High Court. The High Court has the authority to hear the factual and legal determinations made by the District and to render its own independent judgment.

45. Pursuant to Article 23 of Law 48/2009, any party dissatisfied with the High Court's decision may file a cassation with the Supreme Court. Cassation cases will be examined by a panel of judges generally comprised of three justices. The requirements for having a cassation accepted by the Supreme Court are based on Article 30 of Law No. 14 of 1984 on Supreme Court as lastly amended by Law No. 3 of 2009, which grounds for cassation are as follows: The High Court: (a) was not competent or exceeded its authority limitation, (b) incorrectly applied or violated applicable law, or (c) failed to fulfill its duties in complying with the provisions of the applicable statute(s) which threatening to the cancelling of the verdict. In deciding the cassation, the panel examines the application of law by The High Court, but does not re-examine facts.

46. I have been advised by Honeywell's counsel that, if the Northern District of Illinois dismisses the Plaintiffs' lawsuit on the basis of *forum non conveniens*, Moving Defendants agree, without waiving their right to file any appeal to either the High Court or file a cassation appeal, to accept the final decision issued by the Indonesian courts.

1449307.1



Consequently, the Plaintiffs will be able to receive payment for their alleged damages if they are able to prove their arguments in the Indonesian Courts.

## V. CASE CONSOLIDATION

47. I understand that the complaints against Moving Defendants have been filed collectively by several plaintiffs. If plaintiffs were to proceed with the complaints in the Indonesian Courts, they may do so collectively before a single court.

48. Based on the Indonesian prevailing laws, claim consolidation is only prohibited for cases involving ownership of goods. This means claim consolidation is applicable in this case. Further, based on Book II of the Guideline of Duty and Court Administration in Four Courts, 2007 Edition published by the Supreme Court of Republic Indonesia on the chapter of Administration Technical Guideline and Civil Court Technical page 59 – page 60, it is stipulated that:

*"Complaints consolidation may be in the form of subjective consolidation or objective consolidation. Subjective consolidation is a consolidation of some plaintiffs or defendants in one complaint. However, objective consolidation is a consolidation of some complaints over some cases in one complaint."*

*"Consolidation of some complaints in one complaint may be occurred if the consolidation is favorable for the process, i.e there is a connectivity among the complaints and the consolidation will make the examination easier and can prevent the possibility of difference / contradict decision."*

49. The consolidated complaints can be made by filing an application in a letter to the District Court, and subject to the Panel of Judges' discretion this kind of application will be granted.

50. I emphasize that case consolidation is done in accordance with the principles of the Indonesian courts namely, in an affordable, fast, and efficient manner.

## VI. INVOLVEMENT OF THIRD PARTIES

51. Indonesian courts also recognize various procedures to engage or include third parties in a case, whether that involves a third party seeking to intervene or a named party seeking to join a non-party.

1449307.1



52. For example, a defendant may file an objection in their response, which is known as a nonjoinder objection (*Exceptio Plurium Litis Consortium*). In this situation, a defendant brings an objection because a related non-party has been excluded as a defendant, and if the court agrees, it will deny the complaint and order that the plaintiff refile his or her complaint to include all relevant defendants.

53. In addition, based on the processes of *tussenkomst* and *voeging*, a third party can voluntarily participate in a hearing process. The meaning of *Tussenkmost* is a third party who participates in the case independently (without entering into the position of one party), while for *voeging* the third party is entered into the position of one party, most likely in a defendant position.

54. In addition, through a process known as *Vrijwaring*, a defendant may request that a third party who has not been included to be included in the hearing process. The party files a request in its response asking the court to order the non-party into the case, and the court has the authority to either accept or deny the request. In deciding whether to accept the request, the court will consider whether the third party has a "close connection" with the subject matter of the lawsuit. If the court concludes that there is such a connection, an injunction will be given to whoever receives the *Vrijwaring* from the defendant and that third party will be ordered to attend subsequent hearings as an intervention defendant to be heard together with the plaintiffs and the defendant.

55. In my opinion, if this case is re-filed in Indonesia, Indonesia Air Asia can be included in the litigation through the process of *Vrijwaring*, and the District Court will likely find that Indonesia Air Asia has a close connection to this case.

56. In addition, in my opinion, an Indonesian court will have an independent basis to assert jurisdiction over Air Asia because, as the KNKT report noted, Air Asia is an Indonesian airline headquartered in Tangerang, Indonesia, with several bases of operation exclusively located in Indonesia, including Jakarta, Surabaya, Bali, Medan and Bandung.

57. Finally, it is my opinion that an Indonesian court will have an independent basis to assert jurisdiction over Airbus by virtue of it being the manufacturer of the subject Aircraft, which took off and crashed within Indonesian territory. Therefore, it is my opinion that the Plaintiffs may pursue their claims against Airbus in Indonesia even if Airbus were to raise an objection to the Indonesian court's jurisdiction.

1449307.1



## VII. OBTAINING EVIDENCE IN INDONESIA

58. Article 163 of HIR and Article 165 of the Civil Code place the burden of proof on the party presenting an argument, and therefore, every party that appears in a hearing before the District Court is required to provide evidence to support its arguments.

59. Although Indonesia does not recognize pre-trial discovery, Indonesian has applicable procedures that enable a party to obtain evidence that is in the possession of an opposing party or a third party. For example, pursuant to Article 137 of HIR, a party may file a request with the court to order the opposing party to submit or present specific documents and evidence, and a party's refusal to obey such an order allows the court to conclude that the evidence was not favorable to the party required to submit it. In addition, Article 1886 of Indonesian Civil Code stipulates that each party may request that the panel of Judges order opposing parties to submit the documents owned and controlled by them that are related to the case. Failure or refusal of any party to obey such order shall allow the court to reach the conclusion that such evidence is not favorable to the party required to submit the evidence.

60. Attorneys in Indonesia have the right to obtain information, data, and other documentation necessary to defend his or her clients' interests. Specifically, Article 17 of the Advocate Law (Law No. 18 of 2003) allows attorneys to obtain information, data and documents from a government agency or the other party if the information, data and/or documents are needed to defend the client's interests.

61. Similarly, Article 139 of HIR affords Indonesian courts the power to summon any witness residing in Indonesia to give testimony during a court hearing. Articles 138, 140 and 141 of HIR allow a court to compel the presence of such witnesses at hearings. In the event that a witness is distantly located from the District Court where the case is presiding, the court may delegate its powers to another District Court where the witness presides to conduct an examination of that witness and send the witness' testimony. For the written evidence, even if the distance or location of the witness who holds the written evidence is far from the court where the lawsuit is filed, the District Court may delegate its powers to another District Court where the witness resides to conduct an examination of the witness or to collect the written evidence.

62. Further, for evidence in the form of foreign documents, based on Appendix of Regulation of Ministry of Foreign Affairs No. 09/A/KP/XII/2006/01 on General Guideline of Foreign Relation and Cooperation Procedure by Regional Government, it is stipulated

1449307.1



that foreign certificates or documents to be used as evidence in Indonesia shall be legalized by the representative of Republic of Indonesia in the related jurisdiction. The legalization process needs to be notarized by notary in the country where the document was made, then upon its arrival in Indonesia, such document shall be translated by a sworn translator and shall be stamped (*nazegelen*) in the post office.

## VIII. SUBSTANTIVE LAW

63. Under Article 18 of *Algemene Bepalingenvan wetgeping voor Indonesia* (AB) – General Regulation for Indonesia, Indonesian courts will apply the law of the location where a legal action occurred. As applied by Indonesian courts, an Indonesian court will apply Indonesian law to a lawsuit involving Flight Number 8501 because the Accident occurred in a location which Indonesia deems to be its territorial waters. Indonesia has an interest in applying its statutes consistently and correctly.

64. After reviewing the Plaintiffs' Third Amended Complaint, it appears that their claims are based in tort law. Under Indonesian law, a plaintiff may submit claims for product liability, general negligence, or gross negligence.

65. The following provisions of the Civil Code govern tort law. Article 1365 of the Civil Code provides:

> *"Every tort/unlawful act causing damage to another person shall oblige the person causing the damage to pay compensation."*

66. Article 1366 of the Civil Code provides:

> *"Everyone shall be responsible not only for the damage caused by his act, but also for damage caused by his negligence or imprudence."*

67. Thus, pursuant to Articles 1366 and 1367, a party that suffered damages will be able to recover against another party if it is able to show (i) there was an unlawful act (i.e., a violation of law, regulation, or specific subjective right); (ii) there was error or negligence; (iii) there were damages; and (iv) a causal connection between the defendant's unlawful act and the plaintiff's damages.

1449307.1



68. In addition, Article 1367, Paragraph (1) of the Civil Code provides:

> *"Everyone shall be responsible not only for damage caused by his acts alone, but also for damage caused by any person on his responsibility or goods under his supervision."*

69. Article 1370 of the Civil Code provides:

> *"In the context of intentional murder or negligence which causes death, his/her surviving spouse, children or parents of the victim, who usually earn a living out of the deceased's earning, are entitled to a claim for compensation, which must be based on the status and wealth of both parties and the circumstances."*

70. In addition, Indonesia recognizes two types of damages: material and immaterial damages.

- Material damages consist of economic loss, expenses, and actual losses suffered due to the incident. They include funeral expenses, loss of salary, loss of future income, and loss of financial support from the deceased.

- Immaterial damages consist of intangible losses, which include damages for pain and suffering, loss of a spouse, and emotional distress, among others.

71. The panel of judges shall determine the amount of material and immaterial damages after taking into consideration the parties' arguments and evidence presented.

72. Thus, the subject matter and the types of damages sought by the Plaintiffs in this lawsuit can be litigated and are recoverable in Indonesia under Indonesian law. *See* case No. 160/PDT.G/2007/PN.JKT.PST between Mr. Salvatore Abbanat v. PT Lion Mentari Airlines, where the plaintiff was awarded USD 388,636.38 in damages.

On the other hand, in the case No. 186/PDT.G/2009/PN.JKT PST between Andre Adiputra, et.al. v. The Boeing Company, United Technologies Corporation and PT Mandala Airlines, the plaintiffs (Andre Adiputra, et.al.) involving an aircraft accident in Medan, North Sumatra, the Court dismissed the plaintiffs' claims that the accident was caused by the aircraft's defect.

1449307.1

BAHAR & PARTNERS
ATTORNEYS AT LAW

73. In my opinion, the fact that there have been other lawsuits brought by the families of passengers, including against Boeing, related to Indonesian aircraft accidents demonstrates that the Indonesian courts are available to litigate such cases, and will accept the jurisdiction to do so.

74. Due to the fact that many potential witnesses are domiciled in Indonesia, it is likely that the cost of obtaining attendance of these witnesses shall be cheaper in Indonesia than in United States

### IX. INDONESIA'S INTEREST IN THIS CASE

75. In my opinion, Indonesia has a significant interest in this case. This accident occurred in Indonesia on a flight that departed from Indonesia, and the flight was operated by an Indonesian airline. According to the KNKT Report, almost all of the persons onboard the Aircraft—155 out of 162 persons—were Indonesian nationals, and so are the Plaintiffs bringing suit in the Northern District of Illinois. Additionally, Air Asia is governed by the Indonesian regulating bodies and its aircrafts are inspected by Indonesian regulators. I also understand that the Air Asia crew (with the exception of the First Officer) were Indonesian citizens who received certification and training in Indonesia. The accident also saw significant media attention, and I personally saw a significant amount of media coverage immediately after the occurrence.

76. The crash had a wide-ranging impact on the Indonesian airline industry and the Indonesian governmental entities that regulate the industry. After the crash, the Ministry of Transportation of the Republic of Indonesia issued and/or amended many regulations related to safety and security standard, *inter alia*:

   a. MoT Regulation No. PM 14 of 2015 on Civil Aviation Safety Regulation Part 830 (Notification and Reporting of Aircraft Accidents or Serious Incidents and Accident or Serious Incident Investigation Procedures), replacing MoT Regulation No. PM 6 of 2014.
   
   b. The government has enacted new CASR on Aerodrome under MoT Regulation No. PM 55 of 2015, replacing MoT Regulation No. PM 74 of 2013. PM 55 of 2015 regulates among other procedures to obtain airport certificate, the obligations of airport certificate holders, airport register, aerodrome manual, reporting officer, obstacle and hazard, operation hour of aerodrome, etc.

1449307.1



  c. The government has also enacted MoT Regulation No. PM 60 of 2015 on CASR Part 175 (Aeronautical Information Service). PM 60 of 2015 regulates among others licensing of aeronautical information service providers and service standards.

77. The Government of Indonesia has also issued/amended several regulations related to the slot management in Indonesia. The government issued MoT Regulation No. PM 13 of 2015 on Allocation of Slot Time at Airports and DGCA Regulation No. KP 280 of 2015 on Slot Time Management ("**New Slot Regulations**"), revoking DGCA Regulation No. KP 6 of 2014 and DGCA Regulation No. KP 56 of 2014 ("**Old Slot Regulations**"). Under New Slot Regulations, management of slot time for domestic and international flights is conducted by a new institution, called Indonesian Airport Slot Management (IASM). Previously, under Old Slot Regulations, it was conducted by Indonesia Slot Coordinator (IDSC) for domestic flights, and PT Garuda Indonesia (Persero) Tbk for international flights. The above regulatory reforms show how important and influential the case is for the Indonesian Government as well as the Indonesian aviation industry.

78. Based on the Directorate General of Civil Aviation of the Republic of Indonesia ("**DGCA**")'s press release dated 9 January 2015 on the Audit Result Regarding Disapproved Unscheduled Flight (*Hasil Audit Terkait Penerbangan di Luar Jadwal Rute Yang Ditetapkan*)[4], I understand that the DGCA has suspended Air Asia's Surabaya – Singapore route because the violation of the flight operation plan approval. Based on Air Asia's flight operation plan approval, Air Asia was only permitted to fly from Surabaya to Singapore on Mondays, Tuesdays, Thursdays, and Saturdays. However, Air Asia flight 8501 flew to Singapore on Sunday, 28 December 2014. Following this result, the DGCA audited other Indonesian air carriers, and found that 5 (five) Indonesian air carriers also violated their flight operation plan approvals, as follows:

| | | |
|---|---|---|
| a. | Garuda Indonesia | 4 violations |
| b. | Lion Air | 35 violations |
| c. | Wings Air | 18 violations |
| d. | Trans Nusa | 1 violation |
| e. | Susi Air | 3 violations |

Based on the audit result, the DGCA suspended the relevant flight approvals of such Indonesian air carriers.

---

[4] http://hubud.dephub.go.id/?id/news/detail/2324, accessed on 12 January 2016.

1449307.1

Case: 1:15-cv-05486 Document #: 78-4 Filed: 02/26/16 Page 19 of 19 PageID #:867



Considering such audit result, the Minister of Transportation assigned the DGCA to:

a. Improve the DGCA's supervisory functions on the implementation of laws and regulations in air transport sector;
b. Increase compensations for Principal Operations Inspectors (POI) and Principal Maintenance Inspectors (PMI) assigned in air carriers;
c. Empower roles and functions of the airport authority (*otoritas bandar udara*);
d. Evaluate roles and functions of Indonesia Slot Coordinator (IDSC); and
e. Create flight schedule transparency by developing an online system.

79. In Indonesia, this case is considered as a very high profile case. Currently, Indonesia is applying for the candidature of the International Civil Aviation Organization ("**ICAO**") member Council for the 2016-2019 period. Indonesia is still considered by the Federal Aviation Administration ("**FAA**") as a country that falls into Category 2. Indonesia is now in the process of upgrading its status to become a country that falls under Category 1 of the FAA. Therefore, the earnestness of the government of Republic of Indonesia to resolve this case will have a significant impact on the efforts of the government of the Republic of Indonesia to either become ICAO member council or to upgrade its FAA level.

80. In relation to this case, based on information from mass media[5], some of the heirs of the passengers of this case have received full payment of compensation from Air Asia (insurance company), some have received part of the amount of compensation, and some still not receive any compensation yet. However, from mass media, one of the Plaintiffs namely Hadi Widjaja as the heirs of Andreas Widjaja has received compensation from the insurance company.[6]

I hereby declare, acknowledging the sanctions for false testimony (*perjury*) under the laws of the United States, that what has been stated herein is correct and true.

Signed on the date February 25, 2016, in Jakarta

Wahyuni Bahar, S.H., LL.M.

---

[5] http://iaaw.co.id/berita-airline/30-penumpang-airasia-qz8501-terima-kompensasi, "*30 Penumpang Air Asia QZ8501 Terima Kompensasi*", accessed on 11 January 2016, 15:00 pm.
http://www.antaranews.com/berita/482932/sudah-tiga-keluarga-terima-penuh-asuransi-korban-airasia, "*Sudah tiga keluarga terima penuh asurasni korban Air Asia*", accessed on 11 January 2016, 15:15 pm.
[6] http://bisnis.tempo.co/read/news/2015/03/13/092649578/air-asia-baru-cairkan-asuransi-ke-enam-keluarga-korban, "*Air Asia Baru Cairkan Asuransi ke Enam Keluarga Korban*" accessed on 11 January 2016, 15:38 pm.

19

1449307.1