UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Aris Siswanto, Personal Representative of the Heirs of Mrs. Susiyah, deceased, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Airbus Americas, Inc. *et al.*,<br><br>Defendants. | Case No. 15-cv-5486<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

This case arises from the tragic December 28, 2014 crash of AirAsia Flight 8501 during its flight from Surabaya, Indonesia to Singapore. Plaintiffs are personal representatives of the heirs of certain deceased passengers. On March 4, 2016, pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant Thales Avionics, S.A.S.[1] ("Thales Avionics") filed a motion to dismiss for lack of personal jurisdiction. Def.'s Mot. Dismiss [82]. For the reasons explained below, Thales Avionics' motion is granted.[2]

---

[1] "S.A.S." is an acronym for "société par actions simplifiée," a type of French business entity. *See* Margaret Niles, *Going International: Fundamentals of International Business Transactions, Foreign Business Entities,* SL037 ALI-ABA 367, 377 (2005).

[2] The Court previously addressed its authority in this case to exercise personal jurisdiction over another foreign corporate defendant, Airbus, S.A.S. *See* Mem. Op. and Order [63]. The parties to the present motion incorporate by reference the pleadings that precipitated the Court's Airbus, S.A.S. ruling. *See* Def.'s Mot. Dismiss [43]; Pls.' Resp. Def.'s Mot. Dismiss [56]; Def.'s Reply [60]. To the extent any arguments raised by those pleadings are not addressed here, the Court incorporates by reference the findings and reasoning outlined in its prior opinion. *See* Mem. Op. and Order [63].

1

I. **Background**

A. **The Accident and Present Litigation**

On December 28, 2014, AirAsia Flight 8501, operated by PT Indonesia AirAsia ("AirAsia"), crashed in the Java Sea while en route from Surabaya, Indonesia to Singapore. Fourth Am. Compl. [135] 4-6. The crash resulted in the deaths of all passengers and crew on board. *Id*. at 5. Plaintiffs are personal representatives of the heirs of certain deceased passengers.[3] *Id*. at 3. Plaintiffs allege that each of the named Defendants—including Thales Avionics—contributed to the fielding of an accident aircraft that was "defectively and unreasonably dangerous" in myriad respects. *Id*. at 4.

B. **The Accident Aircraft**

The accident aircraft, an Airbus A320-216 registered as PK-AXC, was designed, assembled, and sold by Airbus, S.A.S.[4] Def.'s Mot. Dismiss [83] Ex. B ¶ 6. Airbus, S.A.S. is a French aircraft manufacturing company with its principal place of business in Toulouse, France. *Id*. ¶ 3. The design, assembly, and sale of the accident aircraft all occurred in Europe. *Id*. ¶ 6.

Airbus, S.A.S. sold the accident aircraft in a 2005 purchase agreement to AirAsia Berhad, a Malaysian air carrier that does not operate in the United States.

---

[3] Plaintiffs' Fourth Amended Complaint [135] began with eighteen personal representatives suing on behalf of thirty-four deceased passengers. Since its filing, all Plaintiffs have reached a settlement against all Defendants, with the exception of two personal representatives suing on behalf of three deceased passengers. Pls.' Status Report on Settlement [141].

[4] Airbus, S.A.S. was previously a named defendant in Plaintiffs' Original, Amended, and Second Amended Complaints. Compl. [1]; Am. Compl. [6]; Second Am. Compl. [32]. On December 30, 2015, however, this Court dismissed Plaintiffs' claims against Airbus, S.A.S. for lack of personal jurisdiction. Mem. Op. and Order [63].

2

*Id.* ¶ 7. AirAsia Berhad assigned the purchase agreement to Doric 10 Labuan, a Malaysian limited liability company, and Doric 10 Labuan then leased the aircraft back to AirAsia Berhad. *Id.* ¶ 8. In 2008, Airbus, S.A.S. delivered and transferred title to the accident aircraft to Doric 10 Labuan via AirAsia Berhad in Blagnac, France. *Id.* ¶ 9.

The European Aviation Safety Agency issued a Type Certificate for the Airbus A320-216 aircraft model, as well as individually certifying the accident aircraft. *Id.* ¶ 10. The A320-216 aircraft model, however, has not received a Type Certificate from the United States Federal Aviation Administration ("FAA") and thus, the accident aircraft did not receive individual certification from the FAA. *Id.* ¶¶ 11, 13. The A320-216 aircraft model is not operated by any Airbus, S.A.S. customer in the United States, and, to the best of Airbus, S.A.S.' knowledge, the accident aircraft was never operated in the United States prior to its crash. *Id.* ¶¶ 12, 14.

### C. Defendant Thales Avionics

Plaintiffs allege that Thales Avionics designed, manufactured, assembled, and sold defective pitot tubes, Flight Augmentation Computers ("FACs"), and software for the FACs that was ultimately incorporated into the accident aircraft. Fourth Am. Compl. [135] 19. Thales Avionics is organized under the laws of France, with its headquarters and principal place of business in France. Def.'s Mot. Dismiss [83] Ex. A ¶ 5.

3

Thales Avionics' contacts with the United States are minimal. The company does not own any real property in the United States, nor does it maintain a place of business, telephone number, or registered agent. *Id.* ¶ 6, 12-14. It does not possess any bank or securities accounts, or any other asset, in the United States. *Id.* ¶¶ 7-8. For at least the last five years, Thales Avionics has not been authorized, and has not requested authorization, to do business in the United States, nor does the company hold any licenses obtained from or issued by the United States. *Id.* ¶¶ 9-11. The company does not manufacture or repair any products in America. *Id.* ¶¶ 17-18.

Thales Avionics does not employ any officers or directors in the United States. *Id.* ¶ 15. Of the company's approximately 4000 employees, only one—a Business Development Manager—resides in America. *Id.*; Pls.' Sur-Resp. Def.'s Mot. Dismiss [144] Ex. A at 1-2. The employee's responsibilities include prospecting, meeting, and building relationships with new clients. Pls.' Sur-Resp. Def.'s Mot. Dismiss [144] Ex. A at 3-4.

Thales Avionics does not maintain an authorized sales agent or representative in the United States, but does sell a limited amount of products in France that are subsequently delivered to American customers. Def.'s Mot. Dismiss [83] Ex. A ¶¶ 16, 19. These products are processed in France and generally transferred to French purchasers, who subsequently ship the products to the United States. Pls.' Sur-Resp. Def.'s Mot. Dismiss [144] Ex. A at 4-5. Thales Avionics does

not distribute or deliver its products to customers in the United States on its own behalf. *Id.* at 5.

Nevertheless, for the years 2011 through 2015, Thales Avionics' revenue from deliveries to the United States equaled 88, 96, 99, 116, and 85 million euros, respectively. *Id.* The company's respective global sales for the same period equaled 1.027, 1.105, 1.147, 1.195, and 1.177 billion euros. *Id.* From 2011 through 2015, Thales Avionics also promoted products at thirteen aviation product industry exhibitions in the United States (two in 2011, one in 2012, two in 2013, four in 2014, and four in 2015). *Id.* at 6-10.

Although Thales Avionics sold products to Airbus, S.A.S. for incorporation into the accident aircraft, the design, testing, assembly, and manufacture of these components took place in Europe. Def.'s Mot. Dismiss [83] Ex. A ¶ 23. Final sale and delivery to Airbus, S.A.S. occurred at the final aircraft assembly line in Toulouse, France. *Id.* ¶¶ 21-22. Spare parts later purchased by the airline were sold in France and delivered in Indonesia. *Id.* ¶ 22.

## II. Legal Standard

Rule 12(b)(2) permits a court to dismiss a complaint for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2); *Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 918 (N.D. Ill. 2008). To successfully oppose a Rule 12(b)(2) motion, Plaintiffs bear the burden of demonstrating that the court has personal jurisdiction over the relevant Defendant. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997). Where, as here, no material facts are in dispute, Plaintiffs need

only make a *prima facie* showing that personal jurisdiction exists. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). In making this determination, the Court may receive and weigh affidavits from both parties. *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). The Court draws every reasonable inference and resolves all factual disputes in favor of Plaintiffs. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). Unrefuted facts in Defendant's affidavits, however, will be taken as true. *Id.*

**III. Analysis**

"Personal jurisdiction" refers to the Court's "power over the parties." *KM "Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). It involves the Court's "'power to bring a person into its adjudicative process.'" *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (quoting Black's Law Dictionary 930 (9th ed. 2009)). While that power "derives ultimately from the state (in the general sense of the term), the party's contacts with the state, and the reasonableness of the assertion of judicial authority," the "mechanics for asserting personal jurisdiction in federal court are found in Federal Rule of Civil Procedure 4(k)." *KM Enterprises,* 725 F.3d at 723.

Under Rule 4(k)(1)(C), "when authorized by a federal statute," personal jurisdiction may be established through service of a summons. Fed. R. Civ. P. 4(k)(1)(C); s*ee also Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987) ("Service of process is how a court gets jurisdiction over the person."). The Multiparty, Multiforum Trial Jurisdiction Act ("MMTJA"), 28 U.S.C. § 1369—cited

6

in Plaintiffs' Fourth Amended Complaint—is one such statute. *See* Fourth Am. Compl. [135] 4. When the MMTJA's criteria are met, service of process is proper nationwide (indeed, worldwide if permitted by law):

> When the jurisdiction of the district court is based in whole or in part upon section 1369 of this title, process, other than subpoenas, may be served at any place within the United States, or anywhere outside the United States if otherwise permitted by law.

28 U.S.C. § 1697; *see also Stenger v. Leadenhall Bank & Trust Co. Ltd.*, No. 02-cv-8655, 2004 WL 609795, at *8 (N.D. Ill. March 23, 2004) (interpreting 28 U.S.C. § 1697 as providing nationwide service); *Stenger v. World Harvest Church, Inc.*, No. 02-cv-8036, 2003 WL 22048047, at *3 (N.D. Ill. Aug. 29, 2003) (same).

Plaintiffs contend that the above should end the Court's analysis. *See* Pls.' Resp. Def.'s Mot. Dismiss [56] 1 ("By enacting the MMTJA," Congress "established personal jurisdiction over defendants"; a defendant "to a claim brought under the MMTJA is subject to the personal jurisdiction of every district court" across the United States). The MMTJA's expansion of service and, in turn, potential scope of personal jurisdiction, however, does not override controlling constitutional limitations imposed by the Fifth Amendment's Due Process Clause. *KM Enterprises, Inc.*, 725 F.3d at 723 (finding subpart (1)(C) of Rule 4(k) "subject to due process limitations"). That is, the traditional "minimum contacts" test fashioned in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny still governs. The relevant minimum contacts simply lie with the United States *as a whole* rather than merely the forum state (here, Illinois). *KM Enterprises*, 725 F.3d

7

at 730-31; *Lisak*, 834 F.2d at 671; *Zurich Capital Markets, Inc. v. Coglianese*, 388 F. Supp. 2d 847, 857 (N.D. Ill. 2004).

When defendants are domiciled in the United States, the due process analysis under a nationwide service of process statute is straightforward. Domestic companies and individuals, almost by definition, have minimum contacts with the United States, so there may be general personal jurisdiction in any federal court throughout the country. *See Fitzsimmons v. Barton*, 589 F.2d 330, 333-34 & n.4 (7th Cir. 1979) ("Here the sovereign is the United States, and there can be no question but that the defendant, a resident citizen of the United States, has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court."). Thales Avionics, however, is not a domestic company, so Plaintiffs must show that its contacts with the United States are sufficient to support the exercise of the Court's adjudicative authority.

Courts recognize two types of personal jurisdiction: general and specific.[5] *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697 (7th Cir. 2015). Ostensibly, Plaintiffs proceed only under a theory of general personal jurisdiction.[6] Unlike specific jurisdiction, general jurisdiction is "all-purpose" jurisdiction. *Daimler AG v.*

---

[5] To the extent Plaintiffs still posit that "a third method of establishing personal jurisdiction" exists, namely, "federal statutory personal jurisdiction" under the MMTJA, *see* Pls.' Resp. Def.'s Mot. Dismiss [56] 5, the Court rejects that argument for the reasons outlined in its prior opinion. *See* Mem. Op. and Order [63] 12-14.

[6] In actuality, Plaintiffs contend that personal jurisdiction here "is neither general nor specific," but rather based on the "federal statutory personal jurisdiction" created by the MMTJA. Pls.' Resp. Def.'s Mot. Dismiss [56] 1. Plaintiffs also state, however, that Thales Avionics "has pervasive national contacts" sufficient to satisfy due process. Pls.' Sur-Resp. Def.'s Mot. Dismiss [144] 1. Because Plaintiffs do not claim that their suit specifically "arises out of or relates to" such contacts, *see Daimler AG v. Bauman,* 134 S. Ct. 746 (2014) (internal quotations omitted), the Court interprets this argument as a general personal jurisdiction theory.

*Bauman*, 134 S. Ct. 746, 751 (2014). It allows a defendant to be sued in the forum "regardless of the subject matter of the litigation." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). The consequences of general jurisdiction "can be severe." *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012). A defendant may be called into court "to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 426 (7th Cir. 2010). For this reason, the constitutional requirement for general jurisdiction "is considerably more stringent" than that required for specific jurisdiction. *Purdue Research Found.*, 338 F.3d at 787.

Indeed, in recent cases such as *Daimler AG v. Bauman,* 134 S. Ct. 746, 751 (2014), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011), the Supreme Court "raised the bar" for general jurisdiction and emphasized "that it should not lightly be found." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015). Consequently, general jurisdiction has "played a reduced role" and occupied "a less dominant place" in contemporary jurisprudence. *Daimler*, 134 S. Ct. at 755, 758.

A court may assert general jurisdiction over foreign corporations only when their business contacts with the forum (here, the United States as a whole), "are so 'continuous and systematic' as to render them essentially at home in the forum." *Goodyear*, 564 U.S. at 919 (citing *International Shoe*, 326 U.S. at 317). These contacts must create constructive presence in the forum to such a degree "that it

9

would be fundamentally fair" to require a defendant to answer in a forum court "in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Found.*, 338 F.3d at 787 (emphasis in original).

In *Daimler,* the Supreme Court identified only two places where a corporation may be easily deemed "at home": (1) the state of the corporation's principal place of business; and (2) the state of its incorporation. *Kipp*, 783 F.3d at 698 (citing *Daimler,* 134 S. Ct. at 760). Here, it is uncontested that Thales Avionics is organized under the laws of France, with its headquarters and principal place of business in France. Def.'s Mot. Dismiss [83] Ex. A ¶ 5. Thus, neither of *Daimler's* "exemplar bases" for general personal jurisdiction applies. 134 S. Ct. at 760.

Any "additional candidates" for satisfying due process "have to meet the stringent criteria laid out in *Goodyear* and *Daimler*." *Kipp*, 783 F.3d at 698. Here, Plaintiffs argue that four categories of contacts between Thales Avionics and the United States warrant the exercise of general personal jurisdiction: (1) Thales Avionics' sale of products that are delivered to customers in the United States; (2) its participation in aviation product industry exhibitions in the United States; (3) the presence of one employee residing in the United States; and (4) Thales Avionics' affiliation with its parent corporation, Thales Group. The Court disagrees. These contacts do not—either separately or collectively—permit the Court to draw such a conclusion.

## A. Thales Avionics' Sale of Products Delivered to United States

Regarding sales, it is worth noting at the outset that Thales Avionics does not maintain an authorized sales agent or representative in the United States. Def.'s Mot. Dismiss [83] Ex. A ¶ 19. Rather, products are processed in France and generally transferred to French purchasers, who subsequently ship the products to the United States. Pls.' Sur-Resp. Def.'s Mot. Dismiss [144] Ex. A at 4-5. Thales Avionics does not distribute or deliver its products to customers in the United States on its own behalf. *Id.* at 5.

Nevertheless, for the years 2011 through 2015, Thales Avionics' revenue from this practice equaled 88, 96, 99, 116, and 85 million euros, respectively. *Id.* The company's respective global sales for the same period, however, equaled 1.027, 1.105, 1.147, 1.195, and 1.177 *billion* euros. *Id.* Thus, Thales Avionics' revenue from American customers comprised only between 8.57% and 9.71% of the company's global income. *See id.*

Without more, such sales are insufficient to satisfy Plaintiffs' burden. The Supreme Court has instructed that imputing general personal jurisdiction solely from a defendant's sales in the forum, even if sizable, would rip general personal jurisdiction from its constitutional underpinnings. *Daimler*, 134 S. Ct. at 760-62. In *Daimler*, Argentinian residents filed a complaint in the United States District Court for the Northern District of California against DaimlerChrysler ("Daimler"), a publicly-held German stock company that manufactures Mercedes-Benz vehicles in Germany. 134 S. Ct. at 750-51. The complaint alleged that during Argentina's

11

1976-1983 "Dirty War," Daimler's Argentinian subsidiary, Mercedes-Benz Argentina (MB Argentina), collaborated with state security forces to kidnap, detain, torture, and kill certain MB Argentina workers. *Id*. at 751. No part of MB Argentina's alleged collaboration with Argentinian authorities took place in California or anywhere else in the United States. *Id*. at 752. Rather, the plaintiffs predicated their case for personal jurisdiction upon the California contacts of Mercedes-Benz USA, LLC ("MBUSA"), a subsidiary of Daimler that distributed Daimler-manufactured vehicles to independent dealerships throughout the United States, including California. *Id*. at 751. MBUSA's California sales accounted for 2.4% of Daimler's worldwide sales. *Id*. at 752.

The Court declined to approve the exercise of general jurisdiction in every forum where a corporation "engages in a substantial, continuous, and systematic course of business." *Id*. at 761. According to the Court, such a formulation "is unacceptably grasping" because the general jurisdiction inquiry does not "focus solely on the magnitude of the defendant's in-state contacts"; it "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id*. at 761-762 n. 20. A corporation "that operates in many places can scarcely be deemed at home in all of them." *Id*. Otherwise, to be "at home" in the forum state "would be synonymous with 'doing business,'" and nothing in *International Shoe* or its progeny suggests that "a particular quantum of local activity" should give a forum authority over a "far larger quantum of activity" without any forum connection. *Id*. In short, a corporation's "continuous activity of some sorts within a

state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Id.* at 757 (quoting *International Shoe*, 326 U.S. at 318); *see also uBID*, 623 F.3d at 424-26 (declining general personal jurisdiction over defendants with "hundreds of thousands of customers" in the forum state resulting in "many millions of dollars" in revenue).

### B. Thales Avionics' Participation in Aviation Product Industry Exhibitions

Plaintiffs' reliance upon Thales Avionics' participation in aviation product industry exhibitions is equally unavailing. In *Kipp v. Ski Enterprise Corporation of Wisconsin,* the plaintiff sued in Illinois federal court after he was injured attempting to board a chairlift operated by the defendant. 783 F.3d at 696. The district court dismissed for lack of personal jurisdiction. *Id.* The plaintiff based his appeal, in part, upon the fact that the defendant attended an annual trade show in Chicago. *Id.* It was undisputed that, at the show, the defendant's representatives spoke with potential customers and obtained their email addresses, to which it later sent emails touting its services and sales. *Id.* at 696-97. The Seventh Circuit denied the plaintiff's petition, stating that such contacts came "nowhere close to the *Goodyear/Daimler* standard." *Id.* at 698. The court stated that, although the defendant used the trade shows to solicit business, "no case has ever held that solicitation alone is sufficient for general jurisdiction." *Id.* at 699 (citing *Goodyear*, 564 U.S. at 921; *Ruddy v. Wilmot Mountain, Inc.*, No. 10-cv-07219, 2011 WL 3584418, at *3 (N.D. Ill. Aug. 12, 2011) ("Illinois courts consistently reject mere solicitation of business as a basis for the exercise of general personal jurisdiction.")

13

(citing cases)). The same reasoning applies here.[7] Admittedly, Thales Avionics generally participates in more annual exhibitions—between two and four—than the single annual show attended in *Kipp*. This Court, however, deems such variance a distinction without a meaningful difference.

C. **Thales Avionics' Employee Residing in United States**

Thales Avionics' sole employee residing in the United States calls to mind *Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437 (1952), which the Supreme Court later deemed "the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." *Daimler*, 134 S. Ct. at 755-56; *Goodyear*, 564 U.S. at 928. In *Perkins*, the defendant company was incorporated under the laws of the Philippines, where it operated gold and silver mines. 342 U.S. at 439, 447. The company ceased its mining operations during the Japanese occupation of the Philippines during World War II. *Id*. at 447. In the interim, the company's president returned to his home in Ohio, where he continued to oversee the company's activities. *Id*. at 447-48. The plaintiff sued the company in Ohio state court on a claim that neither arose in Ohio nor was related to the corporation's activities in that state. Id. at 439-40. Nevertheless, the Supreme Court deemed the exercise of general jurisdiction over the company appropriate. *Id*. at 448-49. The Court outlined the foundation for its decision as follows:

---

[7] Such reasoning applies equally to Thales Avionics soliciting new American clients through its Business Development Manager. Pls.' Sur-Resp. Def.'s Mot. Dismiss [144] Ex. A at 3-4.

> [T]he president, who was also the general manager and principal stockholder of the company, returned to his home in Clermont County, Ohio. There he maintained an office in which he conducted his personal affairs and did many things on behalf of the company. He kept there office files of the company. He carried on there correspondence relating to the business of the company and to its employees. He drew and distributed there salary checks on behalf of the company, both in his own favor as president and in favor of two company secretaries who worked there with him. He used and maintained in Clermont County, Ohio, two active bank accounts carrying substantial balances of company funds. A bank in Hamilton County, Ohio, acted as transfer agent for the stock of the company. Several directors' meetings were held at his office or home in Clermont County. From that office he supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines and he dispatched funds to cover purchases of machinery for such rehabilitation. Thus he carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company. He there discharged his duties as president and general manager, both during the occupation of the company's properties by the Japanese and immediately thereafter. While no mining properties in Ohio were owned or operated by the company, many of its wartime activities were directed from Ohio and were being given the personal attention of its president in that State at the time he was served with summons.

*Id*.

Apart from the presence of a single corporate employee within the United States, however, *Perkins* presents few similarities to the present controversy. Unlike the employee in *Perkins*, Thales Avionics' employee, a Business Development Manager, is not the company's president, general manager, or principal stockholder. Def.'s Mot. Dismiss [83] Ex. A ¶ 15. While it is reasonable to assume that the employee conducts business on behalf of the company, the record

fails to reflect a "continuous and systematic supervision." *Perkins*, 342 U.S. at 448. Moreover, in contrast with the company in *Perkins*, Thales Avionics does not utilize American banks to hold the company's funds or stock. Def.'s Mot. Dismiss [83] Ex. A ¶¶ 7-8. There is no evidence that Thales Avionics conducts directors' meetings in the United States, that its singular employee oversees significant corporate policies, or that he directs significant portions of Thales Avionics' business activities. In short, *Perkins* is inapposite to the facts presented here.

### D. Thales Avionics' Affiliation with Thales Group

Finally, Plaintiffs unsuccessfully attempt to impute the contacts of Thales Avionics' parent company, Thales Group, to Thales Avionics.[8] Even assuming, *arguendo*, that Thales Group maintains sufficient contacts with the United States to support general jurisdiction, "jurisdiction over a parent corporation" does not "automatically establish jurisdiction over a wholly owned subsidiary." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). Rather, each defendant's contacts with the forum "must be assessed individually." *Id.* Personal jurisdiction "cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 658–59 (7th Cir. 2012) (quoting *Purdue Research Foundation,* 338 F.3d at 788 n. 17 (imputation requires "an

---

[8] Thales Group's alleged domestic contacts include "21 primary operations in 13 states," "nearly 3,000 employees," and "$2.1 billion in revenue derived from the United States market in 2015 alone." Pls.' Sur-Resp. Def.'s Mot. Dismiss [144] 2-3.

unusually high degree of control" or "that the subsidiary's 'corporate existence is simply a formality.'")).

Plaintiffs present no such evidence in this case.[9]  As such, the "interaction alleged between [Thales Avionics] and [Thales Group] is not sufficient to establish that [Thales Group] controls and dominates [Thales Avionics] to such an extent that its jurisdictional contacts should be imputed to [Thales Avionics]."  *Abelesz*, 692 F.3d at 659; *see also IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) ("Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for those torts, and cannot be served under the tort provision of the long-arm statute.") (internal citations omitted).  Quite simply, Plaintiffs "have offered no basis for piercing the separate corporate identities in this case."  *Abelesz*, 692 F.3d at 659.

As this Court stated previously, nothing in this ruling prevents Plaintiffs from bringing suit against Thales Avionics in a proper forum, or prevents a future court from exercising specific personal jurisdiction in the proper case.  This matter might have been such a case had the crash occurred in the United States; had

---

[9] In Plaintiffs' Sur-Response to Defendant's Motion to Dismiss [144], Plaintiffs protest Thales Avionics' failure to disclose the name and address of the office where Thales Avionics' sole United States employee is located. *Id.* at 5-6.  Plaintiffs theorize that the employee "works in the building of one of the Thales Group domestic corporations," which would support Plaintiffs' "single enterprise" theory.  *Id.*  Statements of counsel, however, are not evidence.  *United States v. Harris*, 230 F.3d 1054, 1057 (7th Cir. 2000).  To the extent Plaintiffs refrained from filing a motion to compel in order to "avoid unnecessary motion practice" and "as a courtesy to defense counsel," they did so at their own peril.  Regardless, even assuming, *arguendo*, that Thales Avionics' employee *is* co-located with a Thales Group entity does not alter the Court's ultimate conclusion.

17

Thales Avionics designed, manufactured, or sold its component parts in the United States; had the FAA certified the aircraft; or had some combination of the above occurred. But those are not the facts here, and the Supreme Court has instructed that international comity cuts against this Court expanding general personal jurisdiction over foreign defendants to fill perceived gaps in the scope of specific personal jurisdiction. *Daimler*, 134 S. Ct. at 762-63.

## IV. Conclusion

Thales Avionics' Motion to Dismiss Plaintiff's Fourth Amended Complaint for Lack of Personal Jurisdiction [82] is granted, and Plaintiffs' claims against Thales Avionics are dismissed with prejudice.

Date: December 9, 2016

ENTERED:

John Robert Blakey
United States District Judge