UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Aris Siswanto, Personal Representative of the Heirs of Mrs. Susiyah, deceased, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Airbus Americas, Inc. *et al.*, <br><br> Defendants. | Case No. 15-cv-5486 <br><br> Judge John Robert Blakey |

# MEMORANDUM OPINION AND ORDER

This case arises from the tragic December 28, 2014 crash of AirAsia Flight 8501 during its flight from Surabaya, Indonesia to Singapore. Plaintiffs are personal representatives of the heirs of certain deceased passengers. On August 18, 2016, Defendant Airbus Americas, Inc. ("Airbus Americas") moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Def.'s Mot. Summ. J. [125]. For the reasons explained below, Airbus Americas' motion is granted.

## I.  Background

### A.  The Accident and Investigation

On December 28, 2014, AirAsia Flight 8501, operated by PT Indonesia AirAsia ("AirAsia"), an Indonesian airline, crashed in the Java Sea while en route from Surabaya, Indonesia to Singapore. Def.'s Local Rule 56.1 Statement of Facts ("DSOF") [126] ¶ 9. Virtually all of the planned flightpath for Flight 8501 was over

1

the Java Sea. *Id.* ¶ 10. The crash resulted in the deaths of all passengers and crew on board. *Id.*

Indonesia's National Transportation Safety Committee (the Komite Nasional Keselamatan Transportasi) ("KNKT") conducted the official investigation into the crash. *Id.* ¶¶ 9, 11. The KNKT investigation revealed that during the flight, the pilots experienced failure of the aircraft's Rudder Travel Limiter Units ("RTLU's"),[1] which caused the aircraft to depart from its normal flight path. *Id.* ¶ 11. While the malfunction itself did not jeopardize the flight, the crew's erroneous reaction to the malfunction nonetheless caused the aircraft to enter a prolonged stall condition from which the flight crew could not recover. *Id.* Tragically, the aircraft crashed into the Java Sea, near the Indonesian island of Borneo, where it was later recovered from the sea bed. *Id.* ¶ 10.

The KNKT investigation further identified deficiencies in AirAsia's maintenance procedures which failed to identify and remedy the malfunctioning RTLU's prior to the December 28, 2014 flight. *Id.* ¶ 12. The KNKT investigation did not mention Airbus Americas or suggest that it played any role in the accident. *Id.*

**B. The Aircraft**

The accident aircraft, an Airbus A320-216, was designed, assembled, and sold by Airbus, S.A.S.[2] DSOF [126] ¶ 13-14. Airbus, S.A.S. is an aircraft manufacturing

---

[1] An aircraft's Rudder Travel Limitation limits rudder deflection based upon speed in order to avoid high structural loads. Moving Defs.' Mem. Supp. Mot. Dismiss [78] Attach. 1 at 36.

[2] "S.A.S." is an acronym for "société par actions simplifiée," a type of French business entity. *See*

company organized under French law with its principal place of business in Toulouse, France. *Id.* ¶ 14. The design, assembly, and sale of the crashed A320-216 all occurred in Europe. *Id.* Airbus, S.A.S. sold the accident aircraft in a 2005 purchase agreement to AirAsia Berhad, a Malaysian air carrier that owns AirAsia. *Id.*

### C. Defendant Airbus Americas

Until 2015, Airbus Americas—whose area of operations included the United States and countries in North and South America—served principally as a marketing and sales subsidiary of Airbus, S.A.S. DSOF [126] ¶ 18. In 2015, the company began performing final assembly of certain Airbus aircraft in Mobile, Alabama. *Id.* Airbus Americas did not, however, design, manufacture, or assemble the accident aircraft or any component thereof. *Id.* ¶ 19.

Nor did Airbus Americas market, promote, sell, lease, or finance the accident aircraft—or any other Airbus aircraft—to AirAsia Berhad or AirAsia. *Id.* ¶¶ 20-21. Similarly, the company never provided, or promised to provide, after-sale warnings, post-sale operational support, instructions, advice, or training as to the maintenance, repair, or operation of any Airbus aircraft (including the accident aircraft) to AirAsia Berhad or AirAsia. *Id.* ¶¶ 22-25. Indeed, Airbus Americas has never marketed, promoted, leased, financed, or sold the Airbus A320-216 model to *any* customer, nor provided training for its operation. *Id.* ¶¶ 26-27.

---

Margaret Niles, *Going International: Fundamentals of International Business Transactions, Foreign Business Entities,* SL037 ALI-ABA 367, 377 (2005).

### D. The Present Litigation

Plaintiffs, personal representatives of the heirs of certain deceased passengers of Flight 8501, initiated this suit on June 19, 2015 and filed an amended complaint on July 1, 2015. Compl. [1]; Am. Compl [6]. In their original and first amended complaints, Plaintiffs named multiple defendants, including Airbus Americas and Airbus, S.A.S. Compl. [1]; Am. Compl [6].

On August 26, 2015, Plaintiffs voluntarily dismissed Airbus Americas without prejudice. Pls.' Notice of Voluntary Dismissal [15]. Plaintiffs filed their Second Amended Complaint on October 15, 2015, which continued to name Airbus, S.A.S. as a defendant. Second Am. Compl. [32]. Specifically, Plaintiffs alleged that Airbus, S.A.S. designed, manufactured, and sold an accident aircraft that was "defectively and unreasonably dangerous" in myriad respects. *Id*. at 3. Additionally, Plaintiffs alleged that Airbus, S.A.S. provided AirAsia with negligent training, after-sale warnings, instructions, and advice as to the maintenance, repair, and operation of the accident aircraft. *Id*. at 6.

On December 30, 2015, the Court dismissed Plaintiffs' claims against Airbus, S.A.S. for lack of personal jurisdiction. Mem. Op. and Order [63]. On February 18, 2016, Plaintiffs filed their Third Amended Complaint. Third Am. Compl. [70]. This complaint reinstated Airbus Americas as a defendant and alleged that Airbus Americas "marketed and assisted in the promotion and sale" of the defective accident aircraft. *Id*. at 4. Plaintiffs further alleged that Airbus Americas negligently provided or failed to provide "after-sale warnings, instructions, and

4

advice as to the maintenance, repair, and operation" of the accident aircraft, as well as "training to flight crews." *Id.* at 7-9.

On August 18, 2016, Airbus Americas moved for summary judgment. Def.'s Mot. Summ. J. [125]. On September 9, 2016, Plaintiffs filed their Fourth Amended Complaint. Fourth Am. Compl. [135]. On November 3, 2016, Plaintiffs once again moved to voluntarily dismiss Airbus Americas without prejudice. Pls.' Mot. Dismiss [146]. Plaintiffs withdrew their motion on November 17, 2016. Minute Entry [152]; *see Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 143 (7th Cir. 1978) ("[T]he plaintiff can only once voluntarily dismiss without prejudice.") (citing Fed. R. Civ. P. 41(a)). The same day, however, Plaintiffs deliberately elected not respond to Airbus Americas' summary judgment motion. Minute Entry [152].

## II. Legal Standard

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In making a summary judgment determination, the Court must "construe all facts and reasonable inferences in favor of the non-moving party." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 653 (7th Cir. 2010). However, where, as here, the non-moving party chooses not to respond to the summary judgment motion, the

Court treats as admitted the uncontroverted facts alleged by the moving party, so long as they are properly supported by references to the record or other evidentiary material. Fed. R. Civ. P. 56(e)(2); *Motzny v. Hilander Food Stores*, 47 F.3d 1173 (7th Cir. 1995); *Stewart v. McGinnis*, 5 F.3d 1031, 1034-35 (7th Cir. 1993).

Moreover, when an adverse party does not respond, summary judgment may be entered against that party if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(3); *Earl v. Belgado*, 113 F. App'x 183, 184 (7th Cir. 2004) (citing *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994)).

## III. Analysis

Because summary judgment is appropriate only if Airbus Americas is entitled to judgment as a matter of law, the Court must first determine which substantive law applies to the present case. *See* Fed. R. Civ. P. 56(a).

Plaintiffs' operative Complaint alleges that this matter is governed by The Multiparty, Multiforum Trial Jurisdiction Act ("MMTJA"), 28 U.S.C. § 1369. Fourth Am. Compl. [135] 4. Because the MMTJA is silent as to which state's substantive law applies to the cases brought into a single federal court, the Court must apply "the traditional federal choice of law approach." Joseph M. Creed, *Choice of Law Under the Multiparty, Multiforum Trial Jurisdiction Act of 2002*, 17 Regent U. L. Rev. 157 (2005). When a federal court hears a case in diversity, it applies the choice-of-law rules of the forum state. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). Illinois applies the "most

6

significant contacts" test to choice-of-law disputes. *Id.* (citing *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.,* 747 N.E.2d 955, 961 (Ill. App. Ct. 2001)). Given the facts presented here, this would result in the application of foreign law.

In contrast, Airbus Americas asserts that Plaintiffs' claims fall under the Court's admiralty jurisdiction, *see* 28 U.S.C. § 1333, and thus federal maritime law governs. Def.'s Mem. Supp. Mot. Summ. J. [127] 5-10; *see East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law."). Airbus Americas' theory is potentially dispositive; if this case indeed falls within the Court's admiralty jurisdiction, maritime law controls, "regardless of whether Plaintiff actually invoked that jurisdiction." *Lambert v. Babcock & Wilcox, Co.*, 70 F. Supp. 2d 877, 883 (S.D. Ind. 1999) (citing *Carey v. Bahama Cruise Lines,* 864 F.2d 201, 206 (1st Cir. 1988)); *Quirin v. Lorillard Tobacco Co.*, 17 F. Supp. 3d 760, 766 (N.D. Ill. 2014) (stating that the plaintiff's invocation of diversity jurisdiction did not control whether federal maritime law applied).

Although before "the Wright Brothers, admiralty jurisdiction necessarily was limited to vessels on navigable waters," the Seventh Circuit has since concluded that, when sufficient connection to maritime activity exists, "airplanes over navigable waters should be treated the same as vessels."[3] *Lu Junhong v. Boeing*

---

[3] Navigable waters include those "that are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 382 (7th Cir. 2001) (quoting *The Daniel Ball*, 77 U.S. 557 (1870)). Because Plaintiffs elected not to respond to Airbus Americas' motion, there is no dispute that the Java Sea qualifies as "navigable water."

7

*Co.*, 792 F.3d 805, 815 (7th Cir. 2015). In *Jerome Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995), the Supreme Court held that the presence of admiralty jurisdiction over a tort claim "turns on two factors: (1) whether the situs of the tort was maritime; and (2) whether the tort bore a significant relationship to traditional maritime activity; these are also referred to as the 'location' and 'nexus' tests." *Quirin*, 17 F. Supp. 3d 760, 767 (N.D. Ill. 2014).

The present case satisfies both parts of the *Grubart* test. Regarding "location," the locality test "reflects the traditional requirement that a tort occur on navigable waters." *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 382 (7th Cir. 2001). The test is satisfied where the negligence alleged "became operative while the aircraft was on or over navigable waters." *Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 264 (1972); *Lu Junhong*, 792 F.3d at 816 (stating that admiralty jurisdiction applies to accidents caused by problems in airplanes that occur above water during trans-oceanic flight). Here, the failure of Flight 8501's RTLU's, as well as the pilots' erroneous response, occurred—*i.e.*, became operative—while the aircraft was over the Java Sea. DSOF [126] ¶¶ 9-10. Thus, the "location" test is satisfied.[4]

---

[4] Despite the geographic disparity between the Java Sea and navigable waters of the United States, "the weight of authority, including the precedent of the Supreme Court, supports the view that there are no clear territorial limits to federal maritime tort jurisdiction." *Perforaciones Exploracion Y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 F. App'x 675, 678-79 (5th Cir. 2009) (citing *Panama R. Co. v. Napier Shipping Co.*, 166 U.S. 280, 285 (1897) ("[T]he law is entirely well settled . . . that torts originating within the waters of a foreign power may be the subject of a suit in a domestic court."); *Malay. Int'l Shipping Corp. v. Sinochem Int'l Co.*, 436 F.3d 349, 355-56 (3d Cir. 2006) (finding that seizure of ship at Chinese port established admiralty jurisdiction), *rev'd on other grounds*, 549 U.S. 422 (2007); *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1117-19 (5th Cir. 1995) (finding admiralty jurisdiction over tort in territorial waters of United Arab Emirates); *Exxon Corp. v. Chick Kam Choo,* 817 F.2d 307, 311 (5th Cir. 1987) (finding that "admiralty jurisdiction over

The "nexus" test "raises two issues." *Weaver*, 255 F.3d at 382. First, the Court must determine whether "the general character" of the activity giving rise to the incident shows a substantial relationship "to traditional maritime activity." *Id.* (internal quotations omitted). The "ferrying of passengers from an island"—here, Indonesia—constitutes a function "traditionally performed by waterborne vessels." *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 219 (1986). Federal courts "have concluded nearly unanimously that transoceanic or island voyages that, but for air travel, would have been conducted by sea have a significant relationship to maritime activity." *In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, No. MDL 1448 (RWS), 2006 WL 1288298, at *9 (S.D.N.Y. May 9, 2006); *see Miller v. United States,* 725 F.2d 1311, 1315 (11th Cir. 1984) (flight between Bahamas and Florida), *cert. denied,* 469 U.S. 821 (1984); *Williams v. United States,* 711 F.2d 893, 896 (9th Cir. 1983) (flight from California to Hawaii); *Ledoux v. Petroleum Helicopters, Inc.,* 609 F.2d 824, 824 (5th Cir. 1980) (per curiam) (use of helicopters to ferry oil rig workers to and from the mainland); *Roberts v. United States,* 498 F.2d 520, 524 (9th Cir. 1974) (flight from Los Angeles to Vietnam), *cert. denied,* 419 U.S. 1070 (1974); *Ledesma v. Airbus Helicopters, Inc.*, No. 3:15-CV-00177, 2016 WL 5341897, at *4 (S.D. Tex. Sept. 23, 2016); *Hammill v. Olympic Airways, S.A.,* 398 F. Supp. 829, 834 (D.D.C. 1975) (flight across Mediterranean Sea from Greek Island of Corfu to Athens).

---

claims by Singapore plaintiffs on an alleged tort in Singapore" was "undoubted"), *rev'd on other grounds,* 486 U.S. 140 (1988).

Under the second part of the "nexus" test, the Court must determine whether the incident involved "has a potentially disruptive effect on maritime commerce." *Weaver*, 255 F.3d at 382 (internal quotations omitted). Courts determine the potential impact of an incident "by examining its *general* character." *Sisson v. Ruby*, 497 U.S. 358, 363 (1990) (emphasis added). That is, the jurisdictional inquiry "does not turn on the *actual* effects on maritime commerce," nor "does it turn on the particular facts of the incident in this case." *Id*. (emphasis in original). Rather, a court "must assess the general features of the *type* of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Id*. (emphasis added). Here, "an aircraft sinking in the water could create a hazard for the navigation of commercial vessels in the vicinity." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 n.5 (1982); *Williamson v. Petroleum Helicopters, Inc.*, 32 F. Supp. 2d 456, 459 (S.D. Tex. 1999) ("The sinking of an aircraft in navigable waters is well within that class of incidents [that pose more than a fanciful risk to commercial shipping.]").

Because Plaintiffs' claims fall within the Court's admiralty jurisdiction, it follows that maritime law governs issues of liability. Plaintiffs' claims against Airbus Americas (Counts I through IV) are based upon theories of product liability and negligence, *see* Fourth Am. Compl. [135] 3-10, both of which have been recognized as part of maritime jurisprudence. *See East River*, 476 U.S. at 865; *Quirin v. Lorillard Tobacco Co.*, 17 F. Supp. 3d 760, 768 (N.D. Ill. 2014).

At this stage in the proceedings, however, Plaintiffs' allegations not only lack evidentiary support, but are directly contracted by the record. Plaintiffs originally alleged that Airbus Americas "marketed and assisted in the promotion and sale" of the accident aircraft. Fourth Am. Compl. [135] at 4. It is now undisputed, however, that Airbus Americas did not market, promote, sell, lease, or finance the accident aircraft—or any other Airbus aircraft—to AirAsia Berhad or AirAsia. DSOF [126] ¶¶ 20-21.[5] Indeed, Airbus Americas has never marketed, promoted, sold, leased, or financed the Airbus A320-216 model to *any* customer. *Id.* ¶ 26.

Similarly, Plaintiffs originally alleged that the accident aircraft "was defectively and unreasonably dangerous" in multiple respects. Fourth Am. Compl. [135] 4. It is now undisputed, however, that Airbus Americas did not design, manufacture, or assemble the accident aircraft or any component thereof. DSOF [126] ¶ 19. It is further undisputed that Airbus Americas never provided or promised to provide post-sale operational support or maintenance to AirAsia Berhad or AirAsia. *Id.* ¶ 25.

Plaintiffs originally alleged that Airbus Americas provided or promised to provide "after-sale warnings, instructions, and advice as to the maintenance, repair, and operation of the subject model aircraft," as well as "training to flight crews." Fourth Am. Compl. [135] 7. It is now undisputed that this is not the case. *See* DSOF [126] ¶¶ 22-23.

---

[5] All of Airbus Americas' alleged facts regarding the company's involvement with the accident aircraft are properly supported by references to evidentiary material, specifically, the declaration of Robert Geckle, Airbus Americas' Vice President and General Counsel. DSOF [126] Ex. 1.

Given the above, Airbus Americas is entitled to summary judgment. Under maritime law, a defendant "cannot be liable for a manufacturing defect" in a product "that it did not make or supply." *Quirin*, 17 F. Supp. 3d 768. Similarly, to prevail in a maritime negligence action, Plaintiffs must establish "that the defendant's breach of duty is the but-for and proximate cause of the injury complained of." *Id.* (internal quotations omitted). Here, Plaintiffs have failed to show that Airbus Americas either owed them a duty of care or that Airbus Americas was the cause of their injuries.

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). There is no longer a genuine dispute as to any material fact as it relates to Airbus Americas' potential liability, and Airbus Americas is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## IV. Conclusion

Defendant Airbus America's Motion for Summary Judgment [125] is granted. The Clerk is directed to enter Rule 58 judgment in favor of Airbus Americas and against Plaintiffs.

Date: December 9, 2016

ENTERED:

_____
John Robert Blakey
United States District Judge